# Exhibit “1”

FINANCIAL SERVICES

# MOTOR VEHICLE LEASE AGREEMENT (OPEN-END)

CALIFORNIA

Lease Date

The words "I", "me" and "my" in this Motor Vehicle Lease Agreement (Open-End) ("Lease") refer to the Lessee(s). The words "you" and "your" in this Lease refer to the Lessor and to anyone to whom this Lease may be assigned. I agree to lease the Leased Vehicle described below ("Vehicle") according to the terms on the front and back of this Lease. I agree to make payments due under this Lease to the address on your invoice or as otherwise directed by you. You are making the disclosures on your behalf and on behalf of the Assignee identified in the Acceptance and Assignment section below. I WILL HAVE NO EQUITY OR OWNERSHIP RIGHTS IN THE VEHICLE, UNLESS I PURCHASE THE VEHICLE UNDER THE TERMS OF MY PURCHASE OPTION.

[REDACTED]

## 1. LESSEE AND LESSOR

| Lessee(s) - Name(s) and Billing Address | Lessor - Name and Address |
|---|---|
| BRIDGEGATE PICTURES CORP. GUY S GRIFFITHE | FERRARI OF NEWPORT BEACH |
| Street / City: 30251 GOLDEN LANTERN SUITE #E405 LAGUNA | Street / City: 1000 W Coast Hwy Newport Beach |
| County: ORANGE State: CA Zip: 92677 | County: ORANGE State: CA Zip: 92663 |
| Vehicle Garaging Address (if different): 14 MINORI LAGUNA NIGUEL, CA 92677 | Driver (if business lessee): GUY S GRIFFITHE |

## 2. VEHICLE DESCRIPTIONS

**A. LEASED VEHICLE** New, Used NEW Year 2017 Make FERRARI Model CALIFORNIA T VIN ZFF77XJ[illegible]H0226113

Color ARGENTO Body Style 2DR CONVER Odometer Reading 60 The Vehicle will be used primarily for personal, family or household purposes. If the following box is checked, the Vehicle will be used primarily for business or commercial purposes: ☐

**B. TRADE-IN VEHICLE** Year 2008 Make BENTLEY Model CONTINENTAL GT SPEED

**C. FOR USE BY LESSOR.** Additional trade-in, turn-in and other individualized agreements.

```
TRADE IN GROSS ALLOWANCE        90,740.96
TRADE IN PAYOFF AMOUNT          82,669.00
NET TRADE IN                     8,071.96
TRADE #1 VIN-SCBCP73W88C058114
TRADE #2 VIN-WP0AA2A83EK173265
TRADE EQUITY TOWARD LEASE
```

| 3. Amount Due at Lease Signing | 4. Monthly/Single Payments | 5. Other Charges (not part of my Monthly Payment) | 6. Total of Payments |
|---|---|---|---|
| (Itemized below)* $ 8,071.96 | A. My first Monthly/Single Payment of $ 3,126.95 is due on 07/03/18 followed by 59 payments of $ 3,126.95 due on the 2 of each month. B. The total of my Monthly Payments or my Single Payment is $ 187,617.00 | A. Termination Fee (if I do not purchase the Vehicle) $ 995.00; B. N/A N/A; C. N/A N/A; D. Total $ 995.00 | (The amount I will have paid by the end of the Lease) $ 190,407.01. I will owe an additional amount if the actual value of the Vehicle is less than the Residual Value. |

## 7. *Itemization of Amount Due at Lease Signing or Delivery

| A. Amount Due at Lease Signing: | |
|---|---|
| 1. Capitalized Cost Reduction | $ 0.75 |
| 2. Tax on Capitalized Cost Reduction | $ 0.06 |
| 3. First Monthly Payment/Single Payment | $ 3,126.95 |
| 4. Refundable Security Deposit | $ 3,150.00 |
| 5. Acquisition Fee | $ N/A |
| 6. Title and Registration Fees | $ 1,679.00 |
| 7. Maintenance Plan | $ N/A |
| 8. Service Contract | $ ~~80.00~~ N/A |
| 9. California Tire Fee | $ ~~29.00~~ |
| 10. Document Preparation Fee (not a governmental fee) | $ ~~6.20~~ |
| 11. Electronic Registration Fee (not a governmental fee) | $ ~~8,071.96~~ |
| 12. Other (specify) | $ |
| 13. Total | $ |

| B. How the Amount Due at Lease Signing will be paid: | |
|---|---|
| 1. Net trade-in allowance | $ 8,071.95 |
| 2. Rebates and noncash credits | $ N/A |
| 3. Amount to be paid in cash | $ N/A |
| 4. Total | $ 8,071.96 |

## 8. My Monthly Payment or Single Payment is determined as shown below:

| | |
|---|---|
| **A. Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ ) and any items I pay over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) | $ 240,976.00 |
| **B. Capitalized Cost Reduction.** The amount of any rebate, cash payment, net trade-in allowance or noncash credit I pay that reduces the Gross Capitalized Cost | − $ 0.75 |
| **C. Adjusted Capitalized Cost.** The amount used in calculating my Base Monthly/Single Payment | = $ 240,975.25 |
| **D. Residual Value.** The value of the Vehicle at the end of the Lease used in calculating my Base Monthly/Single Payment | − $ 140,000.00 |
| **E. Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term or in my Single Payment | = $ 100,975.25 |
| **F. Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts | + $ 73,147.15 |
| **G. Total of Base Monthly/Single Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge | = $ 174,122.40 |
| **H. Lease Payments.** The number of payments in my Lease (Lease Term: 60 months) | ÷ 60 |
| **I. Base Monthly/Single Payment** | = $ 2,902.04 |
| **J. Sales/Use Tax** | + $ 224.91 |
| **K. Other (specify)** | + $ N/A |
| **L. Total Monthly Payment ("Monthly Payment")** Total Single Payment ("Single Payment") | = $ 3,126.95 |
| **M. Rent and Other Charges.** The total amount of Rent Charge and Other Charges in connection with my Lease (Section 8(F) plus 5(D)) | $ 74,142.15 |

**Early Termination. I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.**

**9. Excessive Wear and Use.** I may be charged for excessive wear based on your standards for normal use and for mileage in excess of 3,500 miles per year at the rate of 2.95 per mile.

**10. Purchase Option at End of Lease Term.** I have an option to purchase the Vehicle at the end of the Lease Term for the Residual Value plus a Purchase Option Fee of $ 1,995.00 and applicable taxes.

**Other Important Terms.** See the lease document for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable.

## 11. ITEMIZATION OF GROSS CAPITALIZED COST

| | |
|---|---|
| A. Agreed Upon Value of Vehicle | $ 239,306.00 |
| B. Sales/Use Tax | $ ~~N/A~~ |
| C. Initial Title, Registration and License Fees | $ ~~175.00~~ |
| D. Outstanding Prior Credit or Lease Balance | $ ~~N/A~~ |
| E. Acquisition Fee | $ ~~1,495.00~~ |
| F. Service Contract | $ ~~N/A~~ |
| G. Document Preparation Fee (not a governmental fee) | $ ~~N/A~~ |
| H. Agreed upon Value of Accessories/Optional Equipment (to be added after lease signing): | N/A |
| 1. N/A | $ N/A |
| 2. N/A | $ N/A |
| I. Other (Describe Item) | $ N/A |
| J. Total = Gross Capitalized Cost | $ ~~240,976.00~~ |

## 12. ESTIMATED OFFICIAL FEES AND TAXES

These are amounts payable over the Lease Term and are estimated. Any taxes and fees payable at Lease Signing or Delivery or added to the Base Monthly/Single Payment are included in this amount. The actual total amount for fees and taxes will be determined by the tax rates and fees in effect during the Lease Term.

| | |
|---|---|
| A. Title, License, Registration & Official Fees | $ 8,127.00 ~~13,500.00~~ |
| B. Use or Rental Receipts Tax | $ N/A |
| C. Personal Property Tax | $ N/A |
| D. Emission/Safety Tax Fee N/A | $ N/A |
| E. Other (specify) | $ 21,627.86 |
| F. Total of Estimated Fees and Taxes | $ |

## 13. OPTIONAL MAINTENANCE PLAN OR SERVICE CONTRACT

Although I am not required to do so, I may choose to buy a Maintenance Plan and/or a Service Contract by initialing in the application area(s) below. A Maintenance Plan covers certain factory scheduled maintenance. A Service Contract covers the repair of certain major mechanical breakdowns of the Vehicle and related expenses. I will refer to the Maintenance Plan or Service Contract for details about coverage and duration. ***YOU MAKE NO WARRANTY AS TO THE MAINTENANCE PLAN OR SERVICE CONTRACT OR THEIR ADMINISTRATORS' AND UNDERWRITERS' PERFORMANCE AND DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, AS TO THIS SERVICE.*** I agree to make any inquiries to, and to seek any remedies for nonperformance solely from the Maintenance and/or Service Administrator/Underwriter and not from the Assignee or Lessor.

Maintenance Plan Price $ N/A Term: N/A Months or N/A Miles

Maintenance Plan Administrator N/A Initials

Service Contract Price $ N/A Term: N/A Months or N/A Miles

Service Contract Administrator N/A Initials

## 14. POWER OF ATTORNEY

I authorize you, on my behalf, to settle or release any claims for damage to the Vehicle and sign my name on any checks, drafts, or claim forms under my insurance for damage to the Vehicle. I also authorize you to sign any forms for registering or titling the Vehicle.

## 15. WARRANTY LIMITATIONS

**A. Manufacturer's Warranties.** If the Vehicle is a new vehicle, it is covered by the manufacturer's limited warranty and I will have the rights under that warranty. If the Vehicle is a used vehicle and the manufacturer's warranty section below is completed, it is covered by the manufacturer's warranty for the indicated remaining months/miles and I will have the warranty rights for that period.

**Manufacturer's Warranty:** ______ **months** ______ **miles**

**B. Lessor's Warranties.** ***UNLESS APPLICABLE LAW REQUIRES OTHERWISE, YOU MAKE NO WARRANTIES REGARDING THE VEHICLE, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND I AM LEASING THE VEHICLE "AS IS."*** However, if the Vehicle is a used vehicle and a box is checked below, the original Lessor and not the Assignee makes the warranty indicated.

**Lessor's Warranty:** ☐ **Full** ☐ **Limited**

I agree to continue making all of my payments without set-off, counterclaim or recoupment during any dispute about the Vehicle's condition or performance, the manufacturer's warranty or any dispute with you, except as otherwise provided by law. I agree that no Assignee is responsible for the statements, actions or repairs of the original Lessor or any other dealer relating to the Vehicle. YOU SHALL NOT BE RESPONSIBLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES.

**16. ENTIRE AGREEMENT:** This Lease sets forth all of the agreements between you and me for the lease of the Vehicle. There is no other agreement. Any changes in the Lease must be in writing and signed by you and me.

X [signature] President
LESSEE SIGNATURE

X [signature]
CO-LESSEE SIGNATURE

**CERTIFICATION FOR TAX PURPOSES:** If this Lease indicates that the Vehicle will be used primarily for business or commercial purposes, Lessee certifies under penalty of perjury that it intends that more than 50% of the use of the vehicle will be in its trade or business and that it understands that Lessee will not be treated as the owner of the vehicle for tax purposes. The Lessor has no knowledge that this certification is false in any material respect.

X
LESSEE SIGNATURE

X
CO-LESSEE SIGNATURE

For the following notices, "you" means the Lessee(s).

**You have the right to return the Vehicle, and receive a refund of any payments if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.**

**GAP LIABILITY NOTICE**

**In the event of theft or damage to the Vehicle that results in a total loss, there may be a GAP between the amount due upon early termination and the proceeds of your insurance settlement and deductible. THIS LEASE PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. Optional coverage for the GAP amount may be offered for an additional price.**

**THERE IS NO COOLING OFF PERIOD**

**California law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this Lease simply because you change your mind, decided the Vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this Lease only with the agreement of the lessor or for legal cause, such as fraud.**

**Notice to the Lessee: Do not sign this Lease before you read it or if it contains any blank spaces to be filled in; (1) You are entitled to a completely filled in copy of this Lease; (2) Warning–Unless a charge is included in this Lease for public liability or property damage insurance, payment for that coverage is not provided by this Lease.**

**I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE.**

X [signature] President
LESSEE SIGNATURE
BRIDGEGATE PICTURES CORP.
PRINT NAME AND TITLE (IF BUSINESS ENTITY)

X [signature]
CO-LESSEE SIGNATURE
GUY S GRIFFITHE
PRINT NAME AND TITLE (IF BUSINESS ENTITY)

**ACCEPTANCE AND ASSIGNMENT.** By signing below, the Lessor accepts this Lease with me. The Lessor also hereby assigns its interest in the Lease and the Vehicle to Ferrari Financial Services, Inc. ("FFS") or an assignee designated by FFS. The Lessor's assignment of this Lease is subject to the FFS Financial Services Agreement.

LESSOR: FERRARI OF NEWPORT BEACH — DEALER NAME — 07/03/18 DATE

X [signature] AUTHORIZED SIGNATURE — FNB TEAM PRINT NAME

## INSURANCE, TAXES, FEES, TITLE, REGISTRATION

17. **REQUIRED INSURANCE COVERAGE.** I [illegible] you. The [illegible] (a) minimum [illegible] minimum property damage liability of $100,000 [illegible] $300,000 combined property damage liability and bodily injury [illegible] or comprehensive damage insurance for not less than [illegible] a maximum deductible of $1,000 per claim. The policy must name me as an insured with you as an additional insured for liability and you as the only loss payee. The policy must provide both you and me with 30 days' prior written notice (or any lesser minimum notice period provided by law) of any change in or termination of coverage. I agree to promptly provide you with a copy of the current policy or related certificate of insurance.

*If I do not buy this insurance, you may, but do not have to, buy the insurance. You may insure only yourself or both of us. In either case, I must pay back to you what you paid for the insurance. If you insure only yourself, I will not have insurance.*

***PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.***

18. **TAXES AND FEES.** I will promptly [illegible] or reimburse you for all fees [illegible] which are [illegible] paid my termination liability or purchased the [illegible] ticket, or penalty on my behalf or identify the [illegible] I will reimburse you for your out-of-pocket costs and pay a $50 administration fee.

19. **TITLE, REGISTRATION, INSPECTION.** I am responsible for ensuring the Vehicle is titled in your name and is properly titled, registered and licensed in the state where garaged, or at your direction. If I receive the title for any reason, I agree to send it to you or be responsible for the cost of obtaining a duplicate. I will advise you of the license plate number of the Vehicle. I am responsible for any required inspections. If I move or change the Vehicle's garaging address, I will notify you immediately and pay all resulting taxes and title, registration, or other fees and pay a $100 administration fee. I will not move the Vehicle's garaging address outside the United States.

## USE, CARE AND RETURN OF VEHICLE

20. **USAGE.** I agree not to use or permit the use of the Vehicle: (a) outside the United States; (b) for any unlawful purpose; (c) for hire, rental, livery, law enforcement, emergency or rescue; (d) by an unlicensed driver or anyone whom I have reason to know may operate the Vehicle unlawfully, recklessly, or negligently; (e) for track use or racing or (f) by anyone excluded in my insurance policy from driving the Vehicle. I agree that I will remain the primary driver of the Vehicle unless you consent in writing to another person being the primary driver. I will not allow the Vehicle to be driven by anyone under 25 years old.

21. **MAINTENANCE AND REPAIRS.** I must maintain and service the Vehicle according to the manufacturer's recommendations at an authorized Ferrari dealer. I am responsible for everything that is needed to keep the Vehicle running properly such as gasoline, oil, antifreeze and tune-ups. I must make all needed repairs and must use genuine manufacturer's replacement parts.

22. **MAINTENANCE RECORDS.** I will provide proof of maintenance and repairs to you upon request. If the Vehicle is returned to you, I will return the Vehicle's properly endorsed maintenance booklet, signed by each dealer performing the scheduled maintenance, and any other manufacturer-provided documents. If the Vehicle is a Ferrari and I fail to return the booklet with proper endorsements, I acknowledge that the Vehicle's value will be substantially impaired which may increase my end of lease liability substantially.

23. **EXCESS WEAR AND USE.** I have agreed that my end of Lease liability (as determined under Sections 24 to 33) is based, at least in part, on the Realized Value of the Vehicle. I acknowledge that any excess wear and use or mileage may cause the Realized Value of the vehicle to decline and increase my end of Lease liability. In addition, if the difference between the actual value of the vehicle and Residual Value exceeds three times the Monthly Payment, or in the case of a Single Payment lease, three times the Single Payment divided by the number of months in the Lease Term, I agree that I am responsible for excess mileage and excess wear and use. My responsibility for excess wear and use includes, among other things, (a) glass damage, (b) mismatched tires or tires not comparable to the originals or tires with wear resulting in less than 1/8" of tread remaining at the shallowest point, (c) failure to complete all required servicing, (d) dents or deformities to the exterior of the Vehicle, (e) paint damage, (f) holes, stains, tears, cracks, excess wear marks or burns in the interior, (g) missing parts, tools or accessories, (h) damage from the elements, (i) frame damage, (j) mechanical problems and any damage or condition that causes the Vehicle to operate in a noisy, rough, improper or unsafe manner or voids the Vehicle's warranty, and (k) all damage which would be covered by collision or comprehensive insurance whether or not such insurance is in effect. I also agree that if the Vehicle's odometer is non-operating or has been tampered with, the value of the Vehicle will be substantially less than the value of an identical vehicle which has an operating odometer which has not been tampered with. I agree that my obligations at Lease end include this difference. I acknowledge that if the Vehicle is a Ferrari, the Vehicle is an extraordinary machine which must be maintained in showroom condition. Wear and use that may be considered ordinary when incurred on other vehicles may be considered excess wear and use on a Ferrari. I acknowledge that any physical imperfection could cause the Realized Value of a Ferrari to decline and increase my end of Lease liability.

## ENDING YOUR LEASE

24. **EARLY TERMINATION CONDITIONS.** I may terminate the Lease early by: (a) purchasing the Vehicle (see Section 31); or, (b) if at least 12 months of my Lease Term have expired, by surrendering the Vehicle to a location selected by you, and I will owe you the Early Termination Liability described below. You may terminate the Lease at any time before Lease end if I am in default, and I will owe you the Early Termination Liability described below. You may also terminate the Lease before Lease end as set forth in Section 29.

25. **EARLY TERMINATION LIABILITY.**

A. **Monthly or Single Payment Liability.** My Early Termination Liability will equal the sum of: (1) all amounts due and unpaid under the Lease, plus (2) the amount by which the Adjusted Lease Balance (Section 26 or 27) plus your actual out-of-pocket sale and repair costs exceeds the Realized Value.
If I have a Monthly Payment Lease and the Realized Value exceeds the Adjusted Lease Balance, you will be entitled to the surplus.

B. **Single Payment Lease Credit.** If I have a Single Payment Lease, and the Realized Value exceeds the Adjusted Lease Balance (Section 27) I will be entitled to a credit equal to the lesser of:
(i) the excess; or
(ii) the product of the Single Payment divided by the number of months shown in the Lease Term times the number of whole months remaining until Lease end.
This credit will be compared to the amounts I owe you under the Lease. Any excess will be refunded to me or I will owe you any deficiency.

26. **MONTHLY PAYMENT LEASE ADJUSTED LEASE BALANCE CALCULATION.** (This is an actuarial calculation known as the Constant Yield Method.) If I have a Monthly Payment Lease, the Adjusted Lease Balance at any given time is the Adjusted Capitalized Cost less the depreciation portion of all Base Monthly Payments due up to that time. The depreciation portions of each Base Monthly Payment are figured by applying a constant rate to a declining earning balance. The constant rate is that rate which causes the Adjusted Capitalized Cost to be reduced to the Residual Value over the Lease Term after crediting the depreciation portions of all the Base Monthly Payments when due. The earning balance at any given time is: (a) the Adjusted Capitalized Cost less (b) one Base Monthly Payment and (c) the depreciation portions of the previously due Base Monthly Payments. I can calculate the Adjusted Lease balance for any month with a financial calculator programmed to make actuarial balance calculations by using the Adjusted Capitalized Cost, the Residual Value, the Lease Term and the Base Monthly Payment and following the directions for finding the outstanding balance.

27. **SINGLE PAYMENT LEASE ADJUSTED LEASE BALANCE CALCULATION.** (This is an actuarial calculation.) If I have a Single Payment Lease the Adjusted Lease Balance at any given time is determined by adding to the Initial Balance Subject to Lease Charge described below all Rent Charges accrued as of the month of the calculation. The Rent Charges accrue at a constant rate which, when Rent Charges are compounded monthly, causes the Initial Balance Subject to Lease Charge to increase to the Residual Value over the term. The Initial Balance Subject to Lease Charge is equal to the Adjusted Capitalized Cost less the Single Payment, excluding taxes.

28. **REALIZED VALUE.** The Realized Value may be determined in one of the following ways: (a) You and I may agree in writing; (b) I may obtain, at my own expense, from an independent third party agreeable to you and me, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value; or (c) If the Realized Value is not determined in either of the above ways within 10 days after return or repossession of the Vehicle, you may determine the Realized Value in any of the following ways: (1) The price received by you for the Vehicle at disposition; (2) The highest offer for disposition of the Vehicle; or (3) The wholesale fair market value of the Vehicle at Lease end, which you shall determine by any commercially reasonable means.

29. **LOSS OR DAMAGE TO THE VEHICLE.**

A. **Lessee's Obligations.** If the Vehicle is damaged, lost, stolen or confiscated, I will tell you immediately. If the Vehicle is damaged but repairable, I will promptly have the repairs made.

**If the Vehicle is lost, stolen, confiscated or damaged beyond repair, the Lease will terminate early and lessee will be liable for an amount equal to the sum of (1) all amounts due and unpaid under the Lease, plus (2) the amount by which the Adjusted Lease Balance exceeds the proceeds of the insurance on the Vehicle ("GAP Amount").** I understand that I may be able to purchase a product to cover any such GAP Amount (this is known as a "GAP Product"), but it is my responsibility to do so if I desire.

B. **Credits to Lessee.** If I have a Single Payment Lease, and any insurance proceeds you receive exceed the Adjusted Lease Balance (Section 27), I will be entitled to a credit equal to the lesser of:
(i) the excess; or
(ii) the product of the Single Payment divided by the number of months shown in the Lease Term times the number of whole months remaining until Lease end. This credit will be compared to the amounts I owe you under the Lease. Any excess will be refunded to me or I will owe you any deficiency.

30. **END OF TERM LIABILITY.** If I do not purchase the Vehicle at the end of the Lease Term, I agree to return the Vehicle to a reasonable location selected by you and pay you: (a) the Termination Fee; (b) all amounts due and unpaid under the Lease; (c) the amount by which the Residual Value plus your actual out-of-pocket sale and repairs costs exceeds the Realized Value. If the Realized Value exceeds the Residual Value, you will be entitled to the surplus. If I do not return the Vehicle at Lease end or I am in default and, in addition to the remedies set forth in Section 33, I agree to pay the Base Monthly Payment, or in a Single Payment Lease, the Single Payment divided by the number of months shown in the Lease Term, plus any applicable taxes, for each month or fraction thereof until the Vehicle is returned.

A. The Vehicle's Residual Value is based on reasonable, good faith estimate of the value of the Vehicle at the end of the Lease Term. If the actual value of the Vehicle at that time is greater than the Residual Value, I will have no further liability under this Lease, except for other charges already incurred. If the actual Value of the Vehicle is less than the Residual Value, I will be liable for any difference up to an amount equal to 3 times the Monthly Payment, or in the case of a Single Payment lease, three times the Single Payment divided by the number of months in the Lease Term.
For any difference in excess of that amount, I will be liable only if:
(1) The excess wear and use or mileage (Section 23) resulted in an unusually low value at the end of the Lease Term.
(2) The matter is not otherwise resolved and you win a lawsuit against me seeking a higher payment.
(3) I voluntarily agree with you after the end of the Lease Term to make a higher payment.

Should you bring a lawsuit against me, you must prove that your original estimate of the value of the Vehicle at the end of the Lease Term was reasonable and was made in good faith. For example, you might prove that the actual value was less than the original estimated value, although the original estimate was reasonable because of an unanticipated decline for that type of vehicle. You must also pay my attorneys' fees.

B. If I disagree with the value you assign to the Vehicle, I may obtain, at my own expense, from an independent third party agreeable to both of us, a professional appraisal of the wholesale value of the leased Vehicle which could be realized at sale. The appraisal value shall then be used as the actual value. If the Realized Value exceeds the Residual Value, you will be entitled to the surplus.

31. **PURCHASE OPTION.** I can buy the Vehicle from you or your designated intermediary, "AS IS, WHERE IS." If I want to buy the Vehicle, I will tell you at least 30 days in advance and will complete any documents you require for the purchase. At Lease end, the purchase price will be the Residual Value. Before Lease end, the purchase price will be the Adjusted Lease Balance. In either case, I will also pay any other amounts due or outstanding under the Lease at the time of purchase, and the Purchase Option Fee. Whether I purchase the Vehicle during the Lease Term or upon Lease end, I agree to promptly retitle and re-register the Vehicle and provide a license plate return receipt if applicable.

32. **DEFAULT.** I will be in default of the Lease if: (a) I do not make a payment when due; (b) I do not keep the required insurance in force; (c) I breach any other Lease term or condition; (d) I am the subject of a bankruptcy, receivership or insolvency proceeding or make an assignment for the benefit of creditors; (e) any Lease application information is false or misleading; (f) I die; (g) the Vehicle is seized, encumbered, converted, abandoned, pledged, or sold; (h) I do not purchase the Vehicle and fail to return the Vehicle at Lease end; or (i) I am a business Lessee and dissolve.

33. **REMEDIES.** If I default, you can: (a) take any reasonable measure designed to either correct the default or save yourself from loss, and I will pay you on demand for the costs and expenses you incur; (b) terminate this Lease and my right to possess and use the Vehicle; (c) take possession of the Vehicle; (d) demand payment of my Early Termination Liability as set forth in Section 25; (e) apply any security deposit to any amount I owe you; (f) require me to deliver the Vehicle to a reasonable location selected by you; and/or (g) pursue any other remedy permitted by law.

If the Vehicle is repossessed and property is found in it, I must claim the property at my expense and pay any storage fees within 15 days or you may dispose of the property without liability to me.

If I default I will pay any repossession and storage expenses plus reasonable attorneys' fees and court costs you incur, subject to any limitation or prohibitions under state law, and interest on the amount I owe calculated at 18% per year or such lesser default rate as required by law.

## OTHER TERMS

34. **SECURITY DEPOSIT.** My security deposit may be applied by you to pay all amounts that I fail to pay under this Lease. I will not earn interest or receive any profit or increase on my security deposit. You will refund to me any unapplied security deposit after I pay all my Lease obligations.

35. **LATE CHARGES; PAYMENTS.** If my payments are due on the 29th, 30th, or 31st of the month, they will be due on the last day of the month in the case of February. If I do not make the full amount of a payment required under the Lease within 10 days of its due date, I will pay you a late charge of $50, or such lesser amount as may be required by law. If payment is made by check or debit which is subsequently returned unpaid, you may bill me a service charge of $15. If you deposit a check marked "payment in full" or words of similar effect, you do not waive your right to have the full amount paid.

36. **INDEMNIFICATION.** I agree to indemnify, defend and hold you harmless from all claims, liabilities, suits (including suits alleging strict liability), losses, damages and expenses (including attorneys' fees and court costs) arising out of the condition, maintenance, use, ownership or operation of the Vehicle.

37. **ASSIGNMENT.** You may assign, sell or encumber this Lease and the Vehicle in whole or in part. I MAY NOT TRANSFER OR SUBLEASE THE VEHICLE TO A THIRD PARTY OR ASSIGN THE LEASE OR ANY RIGHTS UNDER IT WITHOUT YOUR PRIOR WRITTEN APPROVAL, WHICH YOU MAY WITHHOLD IN YOUR SOLE JUDGMENT. Subject to any limitations or prohibitions under state law, I agree that I will not assert against any Assignee of this Lease, any claims or defenses I have against a prior Lessor.

38. **GENERAL. Consent.** I consent to your release of information relating to this Lease, including my performance under it, to public officials, credit bureaus, dealers and to other persons who may reasonably request such information. **Odometer Statement.** Federal law requires that I complete a statement of the Vehicle's mileage at the end of the Lease Term. Failure to complete an odometer statement or return it to the Lessor or making a false statement therein may result in fines and imprisonment. I will be provided an odometer statement to complete prior to the end of the Lease Term. **Waiver; Joint Liability.** Your failure to insist upon my complying with my obligations shall not be construed as waiving any such obligations and shall not preclude you from exercising your rights and remedies as to those same obligations in the future. If more than one Lessee signs this Lease, all Lessees will be jointly and severally liable. You may enforce your rights as to one Lessee and not another without affecting your rights as to the other. You can also release a Lessee or guarantor without releasing any other Lessee or guarantor. **Severability.** If any provision of this Lease is held by a court to be invalid or unenforceable, such provision shall be deemed to be deleted or modified to comply and all remaining provisions will remain in force. **Replacement Vehicles.** You will not be required to provide a replacement vehicle to me if the Vehicle is damaged, stolen or being repaired. **Relationship.** The original Lessor is not an agent of any Assignee and the Assignee is not liable for any promise the original Lessor makes which is not in the Lease. **Governing Law.** This Lease shall be governed by the laws of the state in which the Lessor is located. **Class Action Waiver. I hereby waive any rights I have to initiate or participate in a class action related to this contract.**

39. **ARBITRATION**

BINDING ARBITRATION. "For this Section 39, "you" means the Lessee(s).

PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS RIGHTS THAT YOU MAY OTHERWISE HAVE. IT PROVIDES FOR RESOLUTION OF DISPUTES THROUGH BINDING ARBITRATION INSTEAD OF JUDICIAL PROCEEDINGS IN A COURT OF COMPETENT JURISDICTION AND CLASS ACTIONS. ARBITRATION IS FINAL AND BINDING AND SUBJECT TO ONLY VERY LIMITED REVIEW BY A COURT.

Any disputes or claims, including those against any of our subsidiary, parent or affiliate companies and our successors and assigns, arising out of or relating to or from the relationships that likely result from this Lease including issues of interpretation, scope, validity, construction of this arbitration provision and arbitrability of any dispute or claim (whether based in contract, tort, statute, fraud, equitable relief, misrepresentation or any other legal theory including state and federal statutory claims) at the option of either you or us will be resolved exclusively by neutral binding arbitration. IN ARBITRATION, YOU AND WE GIVE UP THE RIGHT TO A TRIAL BY A COURT OR A JURY. The information that can be obtained in discovery from each other or from third persons in arbitration is generally more limited than in a lawsuit. Other rights that you and/or we would have in court may not be available in arbitration.

This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Binding arbitration shall be conducted and administered by the American Arbitration Association ("AAA") and shall proceed under the applicable rules of the AAA, which can be obtained at Attn: Customer Service Department, 335 Madison Ave., 10th Floor, NY, NY 10017-4605 or on the Internet at http://www.adr.org/. The arbiter shall be an attorney or retired judge and shall be selected in accordance with the applicable AAA rules. The arbiter shall apply the governing law of the jurisdiction where you reside consistent with the FAA and shall honor any claims of privilege recognized at law. Unless the AAA's rules require otherwise, the arbitration award shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal district in which you reside. The arbiter shall not have the power to award punitive or treble damages against you or us.

**YOU AND WE AGREE THAT ALL FORMS OF CLASS ACTION OR CLASS ARBITRATION ARE EXPRESSLY PROHIBITED.**

For claims less than $1,000, you will be obligated to pay $50 in arbitration fees and we will pay all other arbitration costs and fees. For claims over $1,000 but under $50,000, you will be obligated to pay your share of the arbitration fees, but no more than the equivalent court filing fee for a state court action filed in the jurisdiction where you reside. For arbitrations in excess of $50,000, all administrative fees and expenses of arbitration will be divided equally between you and us and we will front the arbitration fees if you are unable to pay your share due to your financial condition. The fees will be equitably divided by the arbiter in his or her final decision. In all arbitrations, each party will bear the expense of its own counsel, experts, witnesses and preparation and presentation of evidence at the arbitration unless otherwise mandated by state or federal law. Nothing in this arbitration clause shall prevent you from requesting that AAA reduce or waive any of your fees or that we voluntarily pay an additional share of the fees based upon your financial condition or nature of your claim.

Notwithstanding this clause, both you and we and our successors and assignees retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbiter. Neither you nor we waive the right to arbitrate by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

Any arbitration with respect to any disputes or claims must be brought within two years after the cause of action arises, or within the applicable statute of limitations, whichever is shorter. This limitations period does not apply to any given cause of action when the statutory limitations period for that cause of action cannot be waived, restricted, or otherwise limited by you. If any part of this arbitration clause is deemed to be invalid or otherwise unenforceable or illegal, the balance of this arbitration clause shall remain in effect and shall be construed in accordance with its terms as if the invalid or illegal provision were not contained herein.

# Exhibit “2”

DMV MICROGRAPHICS USE ONLY

NOTICE OF TRANSFER AND RELEASE OF LIABILITY

MAIL THIS PORTION TO DMV-OR-FILE ONLINE AT dmv.ca.gov

A. NEW OWNER'S *LAST* NAME (OR) COMPANY NAME — *FIRST*

B. NEW OWNER'S ADDRESS — APT NUMBER

C. ODOMETER READING (NO TENTHS)

D. CITY — STATE — ZIP CODE

E. DATE OF SALE OR LEASE RETURN — MO. DAY YR

F. SELLER'S OR LESSEE'S *LAST* NAME (OR) COMPANY NAME — *FIRST*

G. SELLING PRICE (NO CENTS) WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS — APT NUMBER

I. SELLER'S OR LESSEE'S SIGNATURE

X

J. CITY — STATE — ZIP CODE

| VEHICLE ID NUMBER | YR. MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|
| ZFF77XJA2H0226113 | 2017 | FERR | 8EQJ798 |

REG 138A (REV. 10/2012)

0230022364

# STATE OF CALIFORNIA

## CERTIFICATE OF TITLE

VEHICLE HISTORY

FCM180726VT

AUTOMOBILE

| VEHICLE ID NUMBER | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|
| ZFF77XJA2H0226113 | 2017 | FERR | 8EQJ798 |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| CV | | | G | | NONE | 07/08/2019 |

| YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|
| 2018 | MA | | ZU | | 07/26/18 |

MOTORCYCLE ENGINE NUMBER

| ODOMETER DATE | ODOMETER READING |
|---|---|
| 07/03/2018 | 60 MI |

ACTUAL MILEAGE

REGISTERED OWNER(S)

FERRARI SVS TTL TRST LSR
BRIDGEGATE PICTURES CORP
OR GRIFFITHE GUY S LSE
30251 GOLDEN LANTERN E405
LAGUNA NIGUEL CA 92677

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. DATE X SIGNATURE OF REGISTERED OWNER

1b. DATE X SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads ______ (no tenths) miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

***I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.***

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |

| PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY |
|---|---|
| | |

***IMPORTANT READ CAREFULLY***

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

FERRARI FNL SVS TTL TRST
250 SYLVAN AVE
ENGLEWD CLFS
NJ 07632

2 X
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date

CA182770708

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

# Exhibit "3"

Advertisement

Home > Ferrari > California > 2017

# Used 2017 Ferrari California

Change Vehicle

Price Range :
$171,919 - $171,919

Combined Fuel Economy
18 MPG

Advertisement

KBB.com Consumer Rating
Be the first to review this

Buying this used?

Other Years

2017 2016 2015 2014 2013 More years

### Pros

If you have cash to burn on an open-air supercar, Ferrari's 2017 California T is a very easy choice to live with. For the money, it offers superb performance, and when equipped with the optional HS (Handling Speciale) package becomes an insanely competent performer.

### Cons

If you need an exotic with a bit more room behind the front seats, a Bentley Continental GT might make a better choice. Looking to save some money? The Corvette Z06 delivers better performance for a fraction of the cost.

### What's New For 2017

Ferrari's 2017 California T retractable-hardtop exotic gains a new Handling Speciale package. This $8,120 option greatly improves the California T's performance both on the track and in the street. It's worth every penny.

## Used 2017 Ferrari California Pricing

Price Range :
$171,919 - $171,919

See how style, options and other factors can impact pricing in your area.

**For Buyers**

You'll get:
Fair Purchase Price
Local Inventory Listings

**For Sellers**

You'll get:
Blue Book® Values
Trade-In, Private Party, Instant Cash Offer

AD

Popular Now 10 Best Used SUVs Under $10,000

# Exhibit “4”

**Fill in this information to identify your case:**

Debtor 1: **Guy S. Griffithe**
First Name | Middle Name | Last Name

Debtor 2 (Spouse if, filing)
First Name | Middle Name | Last Name

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)

☐ Check if this is an amended filing

# Official Form 108
# Statement of Intention for Individuals Filing Under Chapter 7

**12/15**

**If you are an individual filing under chapter 7, you must fill out this form if:**

- ■ **creditors have claims secured by your property, or**
- ■ **you have leased personal property and the lease has not expired.**

**You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form**

**If two married people are filing together in a joint case, both are equally responsible for supplying correct information. Both debtors must sign and date the form.**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).**

## Part 1: List Your Creditors Who Have Secured Claims

1. **For any creditors that you listed in Part 1 of Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D), fill in the information below.**

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name: **Alaska Usa Fcu**<br>Description of property securing debt: **2017 Porsche Cayman Coupe 2D 26,205 miles Condition: Value per KBB.com (Private Party) Debtor intends to surrender vehcile.** | ■ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☐ Retain the property and [explain]: | ☐ No<br>■ Yes |
| Creditor's name: **Altura Credit Union**<br>Description of property securing debt: **2015 Porche Panamera 4 Sedan 4D 56408 miles Condition: Good Value per KBB.com (Private Party)** | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>■ Retain the property and enter into a *Reaffirmation Agreement.*<br>☐ Retain the property and [explain]: | ☐ No<br>■ Yes |
| Creditor's **Altura Credit Union** | | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Debtor 1 **Guy S. Griffithe** Case number (*if known*)

name:

Description of property securing debt: **2015 Nissan Altima 2.5 S Sedan 4D 102,886 miles Condition: Good Value per KBB.com (Private Party)**

☐ Surrender the property.
☐ Retain the property and redeem it.
■ Retain the property and enter into a *Reaffirmation Agreement.*
☐ Retain the property and [explain]:

☐ No
■ Yes

---

Creditor's name: **County of San Bernardino**

Description of property securing debt: **1365 Crafton Ave Ste 2076 Mentone, CA 92359 San Bernardino County**

■ Surrender the property.
☐ Retain the property and redeem it.
☐ Retain the property and enter into a *Reaffirmation Agreement.*
☐ Retain the property and [explain]:

☐ No
■ Yes

---

Creditor's name: **FCI Lender Services Inc**

Description of property securing debt: **IV Management Value consists of 15 million shares of Bridgegate Pictures Corp. formally Big Cat Energy Corporation ($150,000 if trading and not restricted CURRENTLY RESTRICTED STOCK and others have no trading activity reported in 18 months**

■ Surrender the property.
☐ Retain the property and redeem it.
☐ Retain the property and enter into a *Reaffirmation Agreement.*
☐ Retain the property and [explain]:

☐ No
■ Yes

---

Creditor's name: **Marbella HOA**

Description of property securing debt: **1365 Crafton Ave Ste 2076, Mentone, CA 92359 San Bernardino County**

■ Surrender the property.
☐ Retain the property and redeem it.
☐ Retain the property and enter into a *Reaffirmation Agreement.*
☐ Retain the property and [explain]:

☐ No
■ Yes

## Part 2: List Your Unexpired Personal Property Leases

**For any unexpired personal property lease that you listed in Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G), fill in the information below. Do not list real estate leases. Unexpired leases are leases that are still in effect; the lease period has not yet ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).**

**Describe your unexpired personal property leases** — **Will the lease be assumed?**

Lessor's name: **Dish Network**

■ No
☐ Yes

Description of leased Property: **Satellite Services/Dish Acct #6747 Date Incurred 04/18/19 Term End 2031**

Lessor's name: **Ferrrari Financial Services**

■ No

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Debtor 1 **Guy S. Griffithe** Case number *(if known)*

☐ Yes

Description of leased Property: **2017 Ferrari California Lease; Lease is in the name of Bridgegate Pictures Corp**
**Acct #2364**
**Date Incurred 07/2018**
**End Term 06/2023**

Lessor's name: **GM Financial Leasing**

■ No

☐ Yes

Description of leased Property: **2017 Cadillac Escalade**
**Acct #7362**
**Date Incurred 11/15/17**
**End Term 06/2023**

Lessor's name: **HCM Property Management**

■ No

☐ Yes

Description of leased Property: **12 Month Residential Lease**

**Part 3: Sign Below**

**Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any personal property that is subject to an unexpired lease.**

X [signature] X
**Guy S. Griffithe**
Signature of Debtor 1 Signature of Debtor 2

Date **June 26, 2019** Date

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com Best Case Bankruptcy