ORIGINAL

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Joseph Samec In Pro Per<br>Brenda Samec In Pro Per<br>838 N. Charter Dr.<br>Covina CA 91724<br>Telephone: 626-482-6173<br>Email: josephsamec@gmail.com | **FILED**<br><br>**AUG 2 2 2019**<br><br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:          Deputy Clerk |
| ☒ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| In re:<br><br>Guy S.Griffithe<br><br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 8:19-bk-12480-TA<br><br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(ACTION IN NONBANKRUPTCY FORUM)** |
| | DATE: ~~09/10/2019~~ *9/17/2019*<br>TIME: ~~10:30 am~~ *10:0 AM*<br>COURTROOM: 5B |

**Movant**: Joseph Samec and Brenda Samec  Plaintiff in Nonbankrupcty Action, Samec Et. Al. v. Maartin Rossouw Et. Al.. Riverside Historic CourtHouse Case No. RIC1903005

1. **Hearing Location**:
   - ☐ 255 East Temple Street, Los Angeles, CA 90012
   - ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367
   - ☐ 3420 Twelfth Street, Riverside, CA 92501
   - ☒ 411 West Fourth Street, Santa Ana, CA 92701
   - ☐ 1415 State Street, Santa Barbara, CA 93101

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

   a.  ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b.  ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c.  ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 8/22/19

_____
Printed name of law firm (if applicable)

Joseph Samec
_____
Printed name of individual Movant or attorney for Movant

_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 2                           F 4001-1.RFS.NONBK.MOTION

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 8/22/19

_____
Printed name of law firm (if applicable)

Brenda Samec
_____
Printed name of individual Movant or attorney for Movant

_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 2                    F 4001-1.RFS.NONBK.MOTION

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO NONBANKRUPTCY ACTION

1. **In the Nonbankruptcy Action, Movant is:**

   a. ☒ Plaintiff

   b. ☐ Defendant

   c. ☐ Other (specify):

2. **The Nonbankruptcy Action:** There is a pending lawsuit or administrative proceeding (Nonbankruptcy Action) involving the Debtor or the Debtor's bankruptcy estate:

   a. *Name of Nonbankruptcy Action*: Samec Et. Al. v. Maartin Rossouw Et. Al.

   b. *Docket number*: RIC1903005

   c. *Nonbankruptcy forum where Nonbankruptcy Action is pending*:
   4050 Main t. Riverside CA 92501  Riverside Historic CourtHouse

   d. *Causes of action or claims for relief (Claims)*:
   (1)Securities Fraud (Violation of CA Corporations Code Section 255110) (2)Violation of CA Corporations Code Section 25501.5 (3)Fraud in the Inducement (4)Negligent Misrepresentation (5)Breach of Fiduciary Duty *(6) Breach of*

3. **Bankruptcy Case History:** *Contract (7) Negligence (8) Unjust Enrichment (9) Common Count (10) Accounting (11) Injunctive Relief*

   a. ☒ A voluntary  ☐ An involuntary  petition under chapter  ☒ 7 ☐ 11 ☐ 12 ☐ 13
   was filed on (date)  06/26/2019 .

   b. ☐ An order to convert this case to chapter  ☐ 7 ☐ 11 ☐ 12 ☐ 13
   was entered on (date) _____.

   c. ☐ A plan was confirmed on (date) _____.

4. **Grounds for Relief from Stay:** Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Nonbankruptcy Action to final judgment in the nonbankruptcy forum for the following reasons:

   a. ☐ Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.

   b. ☐ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   c. ☐ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   d. ☒ The Claims are nondischargeable in nature and can be most expeditiously resolved in the nonbankruptcy forum.

   e. ☐ The Claims arise under nonbankruptcy law and can be most expeditiously resolved in the nonbankruptcy forum.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 3                          F 4001-1.RFS.NONBK.MOTION

f. ☒ The bankruptcy case was filed in bad faith.

    (1) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

    (2) ☒ The timing of the filing of the bankruptcy petition indicates that it was intended to delay or interfere with the Nonbankruptcy Action.

    (3) ☐ Multiple bankruptcy cases affect the Nonbankruptcy Action.

    (4) ☐ The Debtor filed only a few case commencement documents.  No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

g. ☐ Other (*specify*):

5. **Grounds for Annulment of Stay.**  Movant took postpetition actions against the Debtor.

a. ☐ The actions were taken before Movant knew that the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed in the Nonbankruptcy Action in prior bankruptcy cases affecting the Nonbankruptcy Action as set forth in Exhibit. _____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion:**  (***Important Note:  declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.***)

a. ☒ The DECLARATION RE ACTION IN NONBANKRUPTCY FORUM on page 6.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the Debtor's case commencement documents are attached as Exhibit. _____.

d. ☐ Other evidence (*specify*):

7. ☒ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**Movant requests the following relief:**

1. Relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

2. ☐ Movant may proceed under applicable nonbankruptcy law to enforce its remedies to proceed to final judgment in the nonbankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against the Debtor or property of the Debtor's bankruptcy estate.

3. ☐ The stay is annulled retroactively to the bankruptcy petition date.  Any postpetition acts taken by Movant in the Nonbankruptcy Action shall not constitute a violation of the stay.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 4                        **F 4001-1.RFS.NONBK.MOTION**

4. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified, or annulled as to the co-debtor, on the same terms and condition as to the Debtor.

5. ☐ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

6. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Nonbankruptcy Action.

7. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without further notice

8. ☐ Other relief requested.

Date: _3/22/19_

_____
Printed name of law firm (*if applicable*)

Joseph Samec
_____
Printed name of individual Movant or attorney for Movant

_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 5                          **F 4001-1.RFS.NONBK.MOTION**

4. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified, or annulled as to the co-debtor, on the same terms and condition as to the Debtor.

5. ☐ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

6. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Nonbankruptcy Action.

7. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without further notice

8. ☐ Other relief requested.

Date: 8/22/19

_____
Printed name of law firm (*if applicable*)

Brenda Samec
_____
Printed name of individual Movant or attorney for Movant

_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 5                          F 4001-1.RFS.NONBK.MOTION

## DECLARATION RE ACTION IN NONBANKRUPTCY FORUM

I, (name of Declarant)  Joseph Samec and Brenda Samec _____, declare as follows:

1.   I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding (Nonbankruptcy Action) because:

☒ I am the Movant.
☐ I am Movant's attorney of record in the Nonbankruptcy Action.
☐ I am employed by Movant as (title and capacity):
☐ Other (specify):

2.   I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Nonbankruptcy Action.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

3.   In the Nonbankruptcy Action, Movant is:

☒ Plaintiff
☐ Defendant
☐ Other (specify):

4.   The Nonbankruptcy Action is pending as:

a.   *Name of Nonbankruptcy Action:* Samec Et. Al. v. Maartin Rossouw Et. Al.
b.   *Docket number:* RIC1903005
c.   *Nonbankruptcy court or agency where Nonbankruptcy Action is pending:*
     4050 Main St. Riverside CA 92501 Riverside Historic CourtHouse

5.   **Procedural Status of Nonbankruptcy Action:**

a.   The Claims are:
     (1)Securities Fraud (Violoation of CA Corporations Code Section 255110) (2)Violation of CA Corporations Code Section 25501.5 (3)Fraud in the Inducement (4)Negligent Misrepresentation (5)Breach of Fiduciary Duty (6)Breach of Contract  (7)Negligence (8)Unjust Enrichment (9)Common Court (10)Accounting (11) Injunctive Relief

b.   True and correct copies of the documents filed in the Nonbankruptcy Action are attached as Exhibit  1 ____ .

c.   The Nonbankruptcy Action was filed on (date)  07/10/2019 __ .

d.   Trial or hearing began/is scheduled to begin on (date) _____ . Trial has not been set yet

e.   The trial or hearing is estimated to require _____ days (specify).

f.   Other plaintiffs in the Nonbankruptcy Action are (specify):
     Brenda Samec

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

g.   Other defendants in the Nonbankruptcy Action are (*specify*):

**6.   Grounds for relief from stay:**

a.   ☐   Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

b.   ☐   Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

c.   ☐   Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.  The insurance carrier and policy number are (*specify*):

d.   ☒   The Nonbankruptcy Action can be tried more expeditiously in the nonbankruptcy forum.

   (1)   ☐   It is currently set for trial on (*date*) _____.

   (2)   ☐   It is in advanced stages of discovery and Movant believes that it will be set for trial by (*date*) _____.  The basis for this belief is (*specify*):

   (3)   ☒   The Nonbankruptcy Action involves non-debtor parties and a single trial in the nonbankruptcy forum is the most efficient use of judicial resources.

e.   ☒   The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Nonbankruptcy Action.

   (1)   ☐   Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (2)   ☒   The timing of the filing of the bankruptcy petition indicates it was intended to delay or interfere with the Nonbankruptcy Action based upon the following facts (*specify*):

   (3)   ☐   Multiple bankruptcy cases affecting the Property include:

      (A)   Case name:
         Case number:                          Chapter:
         Date filed:           Date discharged:              Date dismissed:
         Relief from stay regarding this Nonbankruptcy Action   ☐ was   ☐ was not   granted.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(B) Case name:

Case number:                                    Chapter:

Date filed:                  Date discharged:            Date dismissed:

Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not  granted.

(C) Case name:

Case number:                                    Chapter:

Date filed:                  Date discharged:            Date dismissed:

Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not  granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Nonbankruptcy Action.

☐ See attached continuation page for additional facts establishing that this case was filed in bad faith.

f.  ☒ See attached continuation page for other facts justifying relief from stay.

7.  ☐ Actions taken in the Nonbankruptcy Action after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a.  ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b.  ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with the Nonbankruptcy Action enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____

c.  ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

8/22/19        Joseph Samec                                          _____
Date            Printed name                                          Signature

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                        Page 8                        F 4001-1.RFS.NONBK.MOTION

(B) Case name:
Case number:                                    Chapter:
Date filed:                Date discharged:                Date dismissed:
Relief from stay regarding this Nonbankruptcy Action  ☐ was ☐ was not granted.

(C) Case name:
Case number:                                    Chapter:
Date filed:                Date discharged:                Date dismissed:
Relief from stay regarding this Nonbankruptcy Action  ☐ was ☐ was not granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Nonbankruptcy Action.

☐ See attached continuation page for additional facts establishing that this case was filed in bad faith.

f. ☒ See attached continuation page for other facts justifying relief from stay.

7. ☐ Actions taken in the Nonbankruptcy Action after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with the Nonbankruptcy Action enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit ____

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

8/22/19    Brenda Samec                                    _Brenda Samec_
Date         Printed name                                    Signature

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                            Page 8                            F 4001-1.RFS.NONBK.MOTION

**CONTINUATION PAGE FOR 6.f. -- GROUNDS FOR RELIEF FROM STAY**


The fraud causes of action are non-dischargeable in bankruptcy and the issue of liability on these claims must be determined in the pending action, which includes Debtor's co-conspirators in an elaborate fraudulent scheme to take money from alleged investors. The entirety of the scheme is described in the Complaint attached as Exhibit 1.

1    Joseph Samec in Pro Per

2    Brenda Samec in Pro Per
     838 N. Charter Dr.

3    Covina, Ca 91724
     626-482-6173 |

4    josephsamec5@gmail.com

5

6

7                    **SUPERIOR COURT OF CALIFORNIA**

8                        **COUNTY OF RIVERSIDE**

9    JOSEPH SAMEC,  an Individual;        Case No.: Number

10   BRENDA SAMEC, an Individual;         RIC 1903005

11            Plaintiffs:                 COMPLAINT FOR:
                                          1st Amended Complaint
12   vs.                                  1.  **Securities Fraud(Violation of**
                                              **California Corporations Code Section**
13                                            **255110);**

14   MAARTIN ROSSOUW, an individual; MJR  2.  **Violation of California Corporations**
     FINANCIAL AND ISNSURANCE                 **Code Section 25501.5;**
15   SERVICES  a Riverside Company;       3.  **Fraud in the Inducement;**
     RENEWABLE TECHNOLOGIES
16   SOLUTION INC., a Nevada corporation; 4.  **Negligent Misrepresentation;**
     SMRB ,LLC a Washington Limited Liability
17   Company; GREEN ACRES PHARMS, LLC     5.  **Breach of Fiduciary duty;**
     a Nevada Limited Liability Company; GUY
18   GRIFFITHE an individual; ROBERT      6.  **Breach of Contract;**
     RUSSELL an individual; SONJA RUSSELL 7.  **Negligence;**
19   an individual and DOES 1 through 50,  8.  **Unjust Enrichment;**
     inclusive,
20                                        9.  **Common Count;**
                                          10. **Accounting; and**
21            Defendants.                 11. **Injunctive Relief.**

22

23                            .

24

25   PLAINTIFFS, JOSEPH SAMEC and BRENDA SAMEC, allege:

26                                    **I.**

27                                **PARTIES**

28       1.       PLAINTIFFS, JOSEPH SAMEC and BRENDA SAMEC (hereinafter

     "PLAINTIFFS," or "SAMECS") are a married couple who, at all relevant times resided

                                        1

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 10 2019

B VOTRUBA

1    together in the County of Los Angeles, California.

2        2.        PLAINTIFFS are informed and believe, and thereon allege at all times

3    herein mentioned and relevant hereto, DEFENDANT, RENEWABLE TECHNOLOGIES

4    SOLUTION, INC. ("RENEWABLE") is a Nevada corporation doing business in the County

5    of Riverside, State of California.

6        3.        PLAINTIFFS are informed and believe, and thereon allege at all times

7    herein mentioned and relevant hereto, DEFENDANT, SMRB, LLC ("SMRB") is a

8    Washington State limited liability company.

9        4.        PLAINTIFFS are informed and believe, and thereon allege at all times

10   herein mentioned and relevant hereto, DEFENDANT, GREEN ACRES PHARMS, LLC

11   ("GREEN ACRES") is a Nevada State limited liability company doing business in the State

12   of Washington.

13       5.        PLAINTIFFS are informed and believe, and thereon allege at all times

14   herein mentioned and relevant hereto, DEFENDANT, GUY GRIFFITHE ("GRIFFITHE") is

15   an individual residing in the County of Orange, State of California.

16       6.        PLAINTIFFS are informed and believe, and thereon allege at all times

17   herein mentioned and relevant hereto, DEFENDANT, MAARTIN ROSSOUW

18   ("ROSSOUW") is an individual residing in the County of Riverside, State of California.

19       7.        PLAINTIFFS are informed and believe, and thereon allege at all times

20   herein mentioned and relevant hereto, DEFENDANT, ROBERT RUSSELL ("RUSSELL") is

21   an individual residing in the State of Washington.

22       8.        PLAINTIFFS are informed and believe, and thereon allege at all times

23   herein mentioned and relevant hereto, DEFENDANT, SONJA RUSSELL ("SONJA") is an

24   individual residing in the State of Washington.

25       9.        The true names and/or capacities, whether individual, corporate, associate or

26   otherwise, of the DEFENDANT sued herein as DOES 1 through 50 ("DOE

27   DEFENDANTS"), inclusive, are unknown to PLAINTIFFS, who therefore sue said DOE

28   DEFENDANTS by such fictitious names.  PLAINTIFFS are informed and believe, and

1    thereon allege, some or all of said fictitiously named DOE DEFENDANTS have participated

2    in the hereafter alleged wrongful conduct, as set forth herein, and are responsible, in whole or

3    in part for the damages alleged to have been suffered by PLAINTIFFS.  PLAINTIFFS will

4    amend this Complaint to state their true names and capacities when the same have been

5    ascertained. PLAINTIFF'S intend all further references in the Complaint to

6    "DEFENDANTS" or "DEFENDANT", and each of them," to expressly include reference to

7    each fictitiously named DOE DEFENDANT.

8        10.      PLAINTIFFS are further informed and believe and thereon allege that at all

9    times herein mentioned and material hereto, some or all of said DEFENDANTS were the

10   officers, directors, principals, agents, servants, employees and/or authorized representatives

11   of some or each and every other DEFENDANT, and each of them; and, in doing the actions

12   herein alleged or in not doing those acts herein alleged not to have been performed by

13   omission, said DEFENDANTS were acting within the course and scope of such agency

14   and/or authority.

15       11.      PLAINTIFFS are informed and believe, and thereon allege that at all

16   relevant times GRIFFITHE has been the CEO, Secretary, CFO and Director of

17   RENEWABLE, a Nevada corporation registered to do business in California as a foreign

18   corporation.

19       12.      PLAINTIFFS are informed and believe, and thereon allege that at all

20   relevant times GRIFFITHE, RUSSELL, and SONJA have been the managing members of

21   GREEN ACRES and through said positions, have complete control over the entity.

22       13.      PLAINTIFFS are informed and believe, and thereon allege that at all

23   relevant times RUSSELL has been a member of SMRB, LLC with his wife SONJA, and

24   through said role has complete control over the entity.

25       14.      Venue is proper in this Court as many of the events and wrongful acts

26   that give rise to this action occurred in this judicial district and through their acts and

27   omissions, including the act of offering of unregistered securities for sale in the County of

28   Riverside, each has availed him/itself to the jurisdiction of this Court.

## II.

## Background

15.     This lawsuit concerns a fraudulent scheme to entice PLAINTIFFS into investing One Hundred and Fifty thousand Dollars ($150,000) into a marijuana growing venture that was already operating profitably in the state of Washington.

16.     ROSSOUW had been the PLAINTIFF'S financial strategist for seven (7) years.

17.     ROSSOUW told PLAINTIFFS; about GRIFFITHE who was involved in running a marijuana grow business which legally operated in Washington State. Over the next several weeks, ROSSOUW and PLAINTIFFS discussed this investment in detail. ROSSOUW claimed GRIFFITHE had Twelve Million Dollars ($12,000,000) liquid assets and would guarantee PLAINTIFF'S would receive their initial investment, plus, back within two (2) years by receiving quarterly profit share payments.

18.     ROSSOUW explained and represented to PLAINTIFF'S that GREEN ACRES has a legal and profitable ongoing marijuana growing operation in Washington State, and was looking to expand.

19.     During discussions with PLAINTIFFS, ROSSOUW represented this does not reflect additional income being produced from the oil of the product." and (2) "This is based on the 10,000 sq. ft. facility built." and This was a once in a life time investment opportunity, and if PLAINTIFFS purchase interest in GREEN ACRES, they would be assured of receiving a very significant quarterly dividend.  In turn PLAINTIFFS would soon be millionaires when company went public.

20.     ROSSOUW stated to PLAINTIFFS that Pfizer had offered Seven Billion Dollars ($7,000,000,000) to purchase GREEN ACRES PHARMS upon completion of a fully operational facility of 30,000 square feet and legalization of marijuana industry at the federal level.

21.     ROSSOUW gave PLAINTIFF'S a business plan which identified RUSSELL and GRIFFITHE as the "Management Team".  RUSSELL'S bio includes a statement that

loyalty, trust, service, and communications are only a few of the qualities RUSSELL expects his team to envision, emulate, and excel in. GRIFFITHE'S bio provides he was GREEN ACRES "Strategic Development Director" and "has twenty (20) years in the business of finance and company development solutions". GRIFFITHE'S bio further boasts he is a license lender for 18 years, property developer and founder of several business platforms.

22.    Within the business plan, there was a single sheet of financial information, which provided GREEN ACRES would generate gross sales of $32,000,000 in the first year of operations, with net profits of $31,230,917. It also made additional promises: (1) "These financials are represented only as an estimate of low volume and high cost.

23.    No other financial information of any nature was provided other than oral promises of returns as such the initial investments would be repaid within two years.

24.    ROSSOUW was pervasive with his promises. PLAINTIFFS were shown glossy pictures of thousands of marijuana plants in cultivation at a large storage facility ostensibly located in Washington State. PLAINTIFFS were shown pictures of permits and licenses hung on the wall which were represented to be evidence of GREEN ACRES' legal operation.

25.    The conversation turned to how much money PLAINTIFFS wished to invest in RENEWABLE stock. PLAINTIFFS were told by ROSSOUW the stock was being offered to his clients only, at the rate of $100,000 for a 1% interest in SMRB/ aka GREEN ACRES.

26.    Based upon ROSSOUW'S representations and assurances RENEWABLE and GREEN ACRES were making huge legal profits, PLAINTIFF'S agreed to invest $100,000.

27.    Over the next couple of weeks ROSSOUW and PLAINTIFFS conversed about GREEN ACRES future in the medical marijuana business. On June 17, 2016 ROSSOUW informed PLAINTIFFS, the stock price for shares of GREEN ACRES had doubled. However, PLAINTIFFS were enticed to purchase additional shares of GREEN ACRES under what ROSSOUW stated was a grandfather clause. ROSSOUW stated this offer was for his clients only. June 21, 2016 PLANTIFFS purchased an additional .5% for $50,000.

28.    ROSSOUW represented to PLAINTIFF'S they would receive quarterly

1    dividends in perpetuity or at least until the sale of company.

2        29.    The documents entitled "Purchase of Shares Agreement." Along with a zip

3    drive with copies of agreement and additional information on GREEN ACRES were

4    presented to PLAINTIFFS in person by ROSSOUW at PLAINTIFF'S residence in L.A.

5    County. (A true and correct copy of the Shares Agreement presented to PLAINTIFFS is

6    attached hereto as Exhibit "A").

7        30.    The Shares Agreement is confusing and internally inconsistent documents

8    which provides that RUSSELL owns "100% of the issued and outstanding interest of SMRB,

9    LLC, a Washington Limited Liability Corporation". Elsewhere, the Shares Agreements

10    provide the PLAINTIFFS would purchase an interest in SMRB from RENEWABLE. The

11    amount of stock purchased under the Shares Agreements was indicated to be one percent

12    (1%) with an additional half of one percent (.5%) as reflected on the Personal Guarantee

13    Agreement Addendum 2. (A true and correct copy of the Personal Guarantee Agreement

14    Addendum 2 presented to PLAINTIFFS is attached hereto as Exhibit "B"). This money was

15    paid by PLAINTIFF'S to ROSSOUW by personal check endorsed to "RENEWABLE

16    TECHNOLGIES SOLUTIONS INC.". (A true and correct copy of the check is attached

17    hereto as Exhibit "C").

18        31.    PLAINTIFF'S had to continually pressure ROSSOUW in order to collect each

19    quarterly distribution payment, PLAINTIFFS received first quarterly distribution payment,

20    for the third quarter of 2016, from BRIDGEGATE MANAGEMENT for GREEN ACRES

21    PHARMS dated 11/8/16 in two separate checks 4 weeks late. Second quarterly payment, for

22    the fourth quarter of 2016 was received from RENEWABLE TECHNOLOGIES

23    SOLUTIONS INC., 2 1/2 weeks late check dated 1/25/17. Third quarterly payment, for the

24    first quarter of 2017 was received from RENEWABLE TEHNOLOGIES SOLUTIONS

25    INC., 3 weeks late check dated for 4/29/17. Fourth quarterly payment, for the second quarter

26    of 2017 was received from GREEN ACRES PHARMS LLC; 3 weeks late check dated for

27    7/31/17. Fifth quarterly payment, for the third quarter of 2017 was received from GREEN

28    ACRES PHARMS LLC, 4 weeks late check dated for 1/2/17.  (A true and correct copy of

1    the checks is attached hereto as Exhibit "D") as noted supra.  When dividend payments were

2    made they were made from different accounts.  The last dividend paid to PLAINTIFFS was

3    for the third quarter of 2017.  The dividend payments for five quarters equal, 22% of the

4    PLAINTIFF'S original investment.

5         32.     In June 2018 ROSSOUW contacted PLAINTIFFS and said the companies

6    needed to correct their paper work because there had been some mistakes.  He indicated the

7    terms of the investment would be the same and the investment would just transfer over.

8    ROSSOUW stated, GRIFFITHE indicated there would be no more quarterly payments until

9    the new documents were signed.  ROSSOUW provided PLAINTIFF'S with a Subscription

10   Agreement and a Rescission Agreement as attachments in an email received on 6/18/18 3:47

11   pm.  The Subscription Agreement was very muddled and confusing, PLAINTIFFS refused to

12   sign The Subscription Agreement. (Exhibit E). PLAINTIFFS did, however, sign the

13   Rescission Agreement, the Rescission Agreement promises the PLAINTIFFS their initial

14   investment plus 10% interest by 1/18/19.  No money was returned to PLAINTIFFS as part of

15   this transaction.  (Exhibit F)

16        33.     After the payment of their investment funds PLAINTIFFS repeatedly asked

17   ROSSOUW for financial information of GREEN ACRES, RENEWABLE, and SMRB.

18   Initially no financial information was provided but ultimately they were provided in March

19   2018 with a "2017 company overview" which included a glossy brochure indicating net

20   income for GREEN ACRES in 2017 as $317,853. While far less than the $31,000,000

21   promised.  PLAINTIFFS did not receive dividends for the last quarter of 2017 or any quarter

22   thereafter.

23        34.     PLAINTIFFS also repeatedly requested tax documents for the dividends they

24   received. None were provided. At a conference call on August 16, 2018 GRIFFITHE and

25   RUSSELL claimed the company[ies] had lost money, really never made money, and

26   GRIFFITHE paid all of the quarterly dividends "out of his own pocket".  They also admitted

27   the buildings on the property where GREEN ACRES was operating were not owned by

28   RUSSELL.

### III.

### FIRST CAUSE OF ACTION

(Cause of Action as to all DEFENDANTS and DOES 1-20)

(Securities Fraud – Violation of California Corporation Code Section 25110)

35.     PLAINTIFFS hereby repeat, re-allege and incorporate each and every allegation set forth in paragraphs 1 through 35 as though they were set forth in full and at length herein.

36.     From about May 2016 through November 2017, DEFENDANTS, ROSSOUW and GRIFFITHE offered for sale non-registered corporate securities to PLAINTIFFS. These securities include stock in RENEWABLE, stock in GREEN ACRES and stock in SMRB.

37.     In offering to sell and/or broker the sale of said securities, ROSSOUW and GRIFFITHE acted as unregistered security broker/dealers.  PLAINTIFFS are informed and believe, and thereon allege, each made a profit and/or commission from the sale.

38.     In offering to sell and/or broker the sale of said securities, ROSSOUW and GRIFFITHE acted as unlicensed and unregistered agents for RUSSELL and RENEWABLE, GREEN ACRES and SMRB, each of whom profited from the sale.

39.     RENEWABLE, GREEN ACRES and SMRB are incorporated or formed outside the State of California.

40.     The sale of securities in RENEWABLE, GREEN ACRES and SMRB were not qualified under California Corporations Code Sections 25111, 25112, or 25113.

41.     The sale of securities in RENEWABLE, GREEN ACRES and SMRB were not exempt under the provisions of California Corporations Code Sections 25102.

   a.     There was no pre-existing relationship between the parties to allow an exemption;

   b.     PLAINTIFFS are not qualified purchasers within the meaning of California Corporations Code Section 25102(n) (2);

   c.     PLAINTIFFS were not provided a written offering disclosure within the meaning of California Corporations Code Section 25102(n)(4);

42.    As a result of the above, DEFENDANTS, and each of them, violate California Corporations Code Section 25110, et seq.

43.    PLAINTIFFS are therefore entitled to an order rescinding the purchase of the securities in RENEWABLE, GREEN ACRES and SMRB and to recover from DEFENDANTS, and each of them, the amount of their investment, namely $150,000, plus prejudgment interest, as allowed by law, and subject to proof at trial.

## IV.

### SECOND CAUSE OF ACTION

(Cause of Actions to all DEFENDANTS and DOES 1-20)

(Violation of California Corporation Code Section 25501.5 – Unlicensed Broker-Dealer)

44.    PLAINTIFFS hereby repeat, re-allege and incorporate each and every allegation set forth in paragraphs 1 through 44 as though they were set forth in full and at length herein.

45.    At the time of sale and purchase, DEFENDANTS, ROSSOUW and GRIFFITHE were required to be licensed as broker-dealers, but neither had applied for nor secured from the Commissioner of Business Oversight a certificate under Corporations Code Section 25200 authorizing ROSSOUW and GRIFFITHE to act in that capacity.

46.    As a result of the above-described acts, DEFENDANTS, ROSSOUW and GRIFFITHE are liable to PLAINTIFFS, who are entitled to, and hereby do, rescind the above-described purchase of the securities in RENEWABLE, GREEN ACRES, and SMRB. PLAINTIFFS will tender before entry of judgment to DEFENDANTS, and each of them, the shares of the above-described securities.

47.    PLAINTIFFS are therefore entitled to an order rescinding the purchase of the securities in RENEWABLE, GREEN ACRES and SMRB and to recover from DEFENDANTS, and each of them, the amount of the investment, namely $150,000, plus prejudgment interest, costs and attorney fees, as allowed by law, and subject to proof at trial.

///

///

# V.

## THIRD CAUSE OF ACTION

(Cause of Action as to DEFENDANTS ROSSOUW and GRIFFITHE and DOES 1-50)

(Fraud in the Inducement)

48.    PLAINTIFFS hereby repeat re-allege and incorporate each and every allegation set forth in paragraphs 1 through 48 as though they were set forth in full and at length herein.

49.    In May 2016, DEFENDANT ROSSOUW made the following representations to PLAINTIFFS:

a.    PLAINTIFFS would own a minority interest in GREEN ACRES, which would be evidenced by a stock certificate;

b.    GREEN ACRES was already operating profitably as a company and would be finishing a build out to expand operations with their investments by the end of 2016;

c.    PLAINTIFFS would be paid quarterly dividends from profits starting at quarter 3 of 2016;

d.    PLAINTIFFS would receive quarterly financial statements accurately reflecting GREEN ACRES' financial position, including income, expenses and business performance;

e.    PLAINTIFFS would receive a payment whenever GREEN ACRES made a disbursement to other equity holders;

f.    GREEN ACRES was fully licensed to legally grow marijuana in Washington State and was prepared to immediately prepare and sell oils;

g.    GREEN ACRES had a significant inventory of marijuana plants in cultivation;

h.    GREEN ACRES did not have any debt and owned the buildings on its property;

i.    GREEN ACRES was financially sound.

1          j.    GRIFFITHE had a substantial net worth and would back PLAINTIFFS

2    investment;

3          k.    GREEN ACRES would generate over $30 million in sales from

4    January 1, 2017 through December 31, 2017

5          l.    GREEN ACRES was operated by an experienced team of honest

6    people;

7          m.    GRIFFITHE had extensive experience in running marijuana grow

8    operations;

9          n.    PLAINTIFFS would make back their initial investment in two years;

10          o.    PLAINTIFFS would receive regular updates and financial information

11    from GRIFFITHE.

12    50.    Each of these representations was in fact false and ROSSOUW knew at the

13    time he made the aforementioned representations that each was false. In truth;

14          a.    PLAINTIFFS did not receive evidence of an ownership interest in

15    GREEN ACRES or any other entity;

16          b.    GREEN ACRES was not operating profitably, continued to be

17    unprofitable in 2017, and did not use the PLAINTIFFS' investment money to finish the build

18    out nor did it finish the build out in 2016;

19          c.    PLAINTIFFS have not been paid the quarterly dividends promised and

20    the "dividends" paid were actually money from a different source;

21          d.    PLAINTIFFS have not received accurate financial information

22    regarding GREEN ACRES or any other entity;

23          e.    GREEN ACRES, RENEWABLE, SMRB, and other equity holders,

24    including RUSSELL, SONJA, and GRIFFITHE, have received disbursements that

25    PLAINTIFFS have not received;

26          f.    GREEN ACRES was not prepared to prepare and sell oils;

27          g.    GREEN ACRES did not have the represented  inventory of marijuana

28    plants;

h.  GREEN ACRES had and has significant debt;

i.  GREEN ACRES is not financially sound;

j.  GRIFFITHE does not have a substantial net worth;

k.  GREEN ACRES failed to generate anything close to $30 million in sales from January 1, 2017 to December 31,2017;

l.  GREEN ACRES is not operated by a experienced team of honest people;

m.  GRIFFITHE does not have meaningful experience running marijuana grow operations;

n.  GREEN ACRES has not taken any steps to register itself for a public offering–indeed as a limited liability company, it cannot do so as a matter of law.

o.  PLAINTIFFS have not made back their investment;

p.  PLAINTIFFS have not received accurate updates or financial information, and instead have had the financial status of the DEFENDANTS' companies continually misrepresented to them.

51.  ROSSOUW made the aforementioned representations with the specific intent and goal that PLAINTIFFS would rely thereon and pay to DEFENDANTS $150,000 to purchase securities in GREEN ACRES, RENEWABLE and SMRB.

52.  PLAINTIFFS reasonably relied upon the false representations made by ROSSOUW. PLAINTIFFS would not have given DEFENDANTS $150,000 or purchased securities in GREEN ACRES, RENEWABLE or SMRB if they had known the truth of ROSSOUW'S false representations.

53.  As a direct and proximate result of the fraudulent conduct of ROSSOUW and GRIFFITHE, PLAINTIFFS have sustained economic damages in an amount of not less than $150,000 plus pre-judgment interest, costs and attorney's fees according to proof.

54.  ROSSOUW and GRIFFITHE'S conduct has resulted in general damages to PLAINTIFFS, including emotional distress, anxiety, fear and worry in an amount not less than $150,000, subject to proof at trial.

55.     ROSSOUW and GRIFFITHE'S conduct was done intentionally and willfully, with the purpose and design to defraud PLAINTIFFS. These DEFENDANTS knew their conduct would cause PLAINTIFFS great financial and emotional harm. ROSSOUW and GRIFFITHE'S conduct was wanton, willful and completely devoid of any legitimate purpose. Left unchecked these two individuals will seek to defraud and cause harm to others. As a result, PLAINTIFFS are entitled to award of punitive damages to both punish ROSSOUW and GRIFFITHE and to dissuade them from engaging in similar wrongful conduct in the future, all in amount subject to proof at trial.

## VI.

## FOURTH CAUSE OF ACTION

(Cause of Action as to all DEFENDANTS and DOES 1-50)

(Negligent Misrepresentation)

56.     PLAINTIFFS herby repeat, re-allege and incorporate each and every allegation set forth in paragraphs 1 through 56 as though set forth in full and at length herein

57.     In May 2016, DEFENDANTS, ROSSOUW and GRIFFITHE made the following representations to PLAINTIFFS:

a.     PLAINTIFFS would own a minority interest in GREEN ACRES, which would be evidenced by a stock certificate;

b.     GREEN ACRES was already operating profitably as a company and would be finishing a build out to expand operations with their investments by the end of 2016;

c.     PLAINTIFFS would be paid quarterly dividends from profits starting at quarter 3 of 2016;

d.     PLAINTIFFS would receive quarterly financial statements accurately reflecting GREEN ACRES' financial position, including income, expenses and business performance;

e.     PLAINTIFFS would receive a payment whenever GREEN ACRES made disbursement to other equity holders;

1          f.      GREEN ACRES was fully licensed to legally grow marijuana in

2 Washington State and was prepared to immediately prepare and sell oils;

3          g.      GREEN ACRES had a significant inventory of marijuana plants in

4 cultivation;

5          h.      GREEN ACRES did not have any debt and owned the buildings on its

6 property;

7          i.      GREEN ACRES was financially sound.

8          j.      GRIFFITHE had a substantial net worth and would back

9 PLAINTIFFS' investment;

10          k.      GREEN ACRES would generate over $30 million in sales from

11 January 1, 2017 through December 31, 2017;

12          l.      GREEN ACRES was operated by an experienced team of honest

13 people;

14          m.      GRIFFITHE had extensive experience in running marijuana grow

15 operations;

16          n.      PLAINTIFFS would make back their initial investment in a few years;

17          o.      PLAINTIFFS would receive regular updates and financial information

18 from GRIFFITHE.

19     58.      Each of these representations was in fact false and ROSSOUW knew or

20 should have known at the time they made the aforementioned representations each was false.

21 In truth;

22          a.      PLAINTIFFS did not receive evidence of an ownership interest in

23 GREEN ACRES or any other entity;

24          b.      GREEN ACRES was not operating profitably, continued to be

25 unprofitable in 2017, and did not use the PLAINTIFFS' investment money to finish the build

26 out nor did they finish the build out in 2016;

27          c.      PLAINTIFFS have not been paid the quarterly dividends promised and

28 the "dividends" paid were actually money from a different source;

d.     PLAINTIFFS have not received accurate financial information regarding GREEN ACRES or any other entity;

e.     GREEN ACRES, RENEWABLE, SMRB, and other equity holders, including RUSSELL and GRIFFITHE, have received disbursements PLAINTIFFS have not received;

f.     GREEN ACRES was not prepared to prepare and sell oils;

g.     GREEN ACRES did not have an inventory of marijuana plants;

h.     GREEN ACRES had and has significant debt;

i.     GREEN ACRES is not financially sound;

j.     GRIFFITHE does not have a substantial net worth;

k.     GREEN ACRES failed to generate anything close to $30 million in sales from January 1, 2017 through December 31, 2017;

l.     GREEN ACRES is not operated by a experienced team of honest people;

m.     GRIFFITHE does not have meaningful experience running marijuana grow operations;

n.     GREEN ACRES has not taken any steps to register itself for a public offering--indeed as a limited liability company, it cannot do so as a matter of law.

o.     PLAINTIFFS have not made back their investment;

p.     PLAINTIFFS have not received accurate updates or financial information, and instead have had the financial status of the DEFENDANTS companies continually misrepresented to them.

59.     ROSSOUW made the aforementioned representations with the intent and goal that PLAINTIFFS would rely thereon and pay the DEFENDANTS $150,000 and purchase securities in GREEN ACRES, RENEWABLE and/or SMRB.

60.     PLAINTIFFS reasonably relied upon the false representations made by DEFENDANT ROSSOUW.  PLAINTIFFS would not have given DEFENDANTS $150,000 or purchased securities in GREEN ACRES, RENEWABLE, or SMRB if they had known the

truth of DEFENDANTS' false representations.

61.     As a direct and proximate result of the negligent conduct of ROSSOUW and GRIFFITHE, PLAINTIFFS have sustained economic damages in amount of no less than $150,000, plus pre-judgment interest, costs and attorney's fees according to proof.

62.     ROSSOUW and GRIFFITHE'S conduct has resulted in general damages, including emotional distress, anxiety, fear and worry to PLAINTIFFS in an amount not less than $150,000, subject to proof at trial.

## VII.

## FIFTH CAUSE OF ACTION

(Cause of Action as to GRIFFITHE and RUSSELL and DOES 1 – 50)

(Breach of Fiduciary Duty)

63.     PLAINTIFFS hereby repeat, re-allege and incorporate each and every allegation set forth in paragraphs 1 through 63 as though set forth in full and at length herein.

64.     At all times relevant herein, RUSSELL and SONJA were and still are Governors' of SMRB and therefore owed a fiduciary duty to PLAINTIFFS, who own and control a minority interest in SMRB.

65.     At all times relevant herein RUSSELL and GRIFFITHE were managing members of GREEN ACRES and therefore owed a fiduciary duty to PLAINTIFFS, who own a minority interest therein.

66.     At all times relevant herein, GRIFFITHE was CEO, Secretary, CFO and Director of RENEWABLE and therefore owes a fiduciary duty to PLAINTIFFS who own a minority interest in the company.

67.     DEFENDANTS, GRIFFITHE, RUSSELL and SONJA breached their fiduciary duty in several ways, including:

        a.      Failing to provide PLAINTIFFS evidence of their ownership interest in each respective company;

        b.      Failing to provide PLAINTIFFS accurate accounting and financial information;

1      c.    Failing to provide PLAINTIFFS accurate tax information;

2      d.    Failing to pay all taxes, fees and fines as they came due;

3      e.    Failing to give PLAINTIFFS access to corporate books and records;

4      f.    Failure to keep accurate books and records for the companies and

5    accounts;

6      g.    Failing to hold and annual shareholder/member meeting;

7      h.    Failing to hold an annual board of director meeting;

8      i.    Failing to follow prescribed rules and laws governing the maintenance

9    of corporate books and records;

10      j.    Failing to follow applicable bylaws and corporate resolutions regarding

11    the management of the company[ies];

12      k.    Misrepresenting the financial status of the companies;

13      l.    Engaging in criminal activities, which put the company and its owners

14    in jeopardy;

15      m.    Gross mismanagement;

16      n.    Theft and conversion of company assets;

17      o.    Failure to disclose money to PLAINTIFFS which they were entitled to

18    receive as shareholders/members;

19      p.    Diverting assets so as to put them beyond the reach of PLAINTIFFS;

20      q.    Paying themselves excessive and/or non-disclosed salaries;

21      r.    Misrepresenting company income and expenses to PLAINTIFFS;

22      s.    Using company assets and funds to pay their personal non-business-

23    related expenses;

24      t.    Diverting business opportunities to other ventures and/or themselves;

25    and

26      u.    Self-dealing.

27    68.    DEFENDANTS, GRIFFITHE, RUSSELL and SONJA acted without

28    justification and against the interests of PLAINTIFFS.  PLAINTIFFS did not consent to the

1    wrongful actions of GRIFFITHE, RUSSELL and SONJA as alleged herein.

2      69.  As a direct and proximate result of GRIFFITHE'S, RUSSELL'S and

3    SONJA'S breaches of their fiduciary duty, PLAINTIFFS have sustained economic damages

4    in an amount of not less than $150,000, plus prejudgment interest, costs and recoverable

5    attorney's fees, all subject to proof at trial.

6    **VIII.**

7    **SIXTH CAUSE OF ACTION**

8    (Cause of Action as to GREEN ACRES and DOES 1-50)

9    (Breach of Contract)

10      70.  PLAINTIFFS hereby repeat, re-allege and incorporate each and every

11    allegation set forth in paragraphs 1 through 70 as though set forth in full and at length herein.

12      71.  On or about October 2018, PLAINTIFFS entered into a written Rescission

13    Agreement with GREEN ACRES.

14      72.  Under the terms of the Rescission Agreement PLAINTIFFS were to receive

15    their initial investment of $150,000, plus 10% interest.

16      73.  PLAINTIFFS performed all obligations due from them under the terms of the

17    Rescission Agreement.

18      74.  GREEN ACRES breached the terms of the Recession Agreement by failing to

19    deliver to PLAINTIFFS his interests in GREEN ACRES, SMRB and RENEWABLE.

20      75.  As a result of the breach, as alleged herein, PLAINTIFFS have sustained

21    economic damages of not less than $150,000, plus prejudgment interest, and costs, all subject

22    to proof at trial.

23    **IX.**

24    **SEVENTH CAUSE OF ACTION**

25    (Cause of Action as to GRIFFITHE and RUSSELL and DOES 1-50)

26    (Negligence)

27      76.  PLAINTIFFS hereby repeat, re-allege and incorporate each and every

28    allegation set forth in paragraphs 1 through 76 as though set forth in full and at length herein.

18

COMPLAINT

77.     At all times relevant herein DEFENDANTS, GRIFFITHE, RUSSELL and SONJA owed PLAINTIFFS a legal duty of care, which duty included protecting their investment in GREEN ACRES, SMRB, and RENEWABLE.

78.     GRIFFITHE, RUSSELL and SONJA have breached their duty of care in several ways, including by their mismanagement of the companies and mismanagement of company assets.

79.     As a direct and proximate result of DEFENDANTS' negligence, PLAINTIFFS have sustained economic damages of at least $150,000, subject to proof at trial.

80.     As a further direct and proximate result of DEFENDANTS' negligence, as alleged herein, PLAINTIFFS have sustained general damages, including emotional distress, stress, anxiety, worry, and fear in amount of at least $150,000, subject to proof at trial.

## X.

### EIGHTH CAUSE OF ACTION

(Cause of Action as to all DEFENDANTS and DOES 1 – 50)

(Unjust Enrichment/Constructive Trust)

81.     PLAINTIFFS hereby repeat, re-allege and incorporate each and every allegation set forth in paragraphs 1 through 81 as though they were set forth in full and at length herein.

82.     Beginning in May 2016 and continuing to the present time, DEFENDANTS, and each of them, wrongfully and without good cause or justification, diverted, misappropriated and cheated valuable assets, funds, money belonging to PLAINTIFFS and converted the same to their own use or to a use which benefitted themselves to the detriment of PLAINTIFFS.

83.     This wrongful taking began with PLAINTIFFS' payment to GRIFFITHE, RENEWABLE, and ROSSOUW, whereby these DEFENDANTS hold in trust their respective interest in GREEN ACRES and SMRB.

84.     Thereafter, all DEFENDANTS, and each of them, took and received money

COMPLAINT

1    from the operations of RENEWABLE, GREEN ACRES, and SMRB which rightfully belong

2    to PLAINTIFFS, including PLAINTIFFS' share of the net profits and disbursements.

3        85.      As a result thereof and in order to prevent a miscarriage of justice and the

4    unjust enrichment of DEFENDANTS, and each of them, PLAINTIFFS are entitled to an

5    order that each of the DEFENDANTS holds the stock, assets, money, dividends and net

6    profits rightfully belonging to PLAINTIFFS and/or anything of value purchased or acquired

7    by DEFENDANTS, and each of them, with said stock, assets, money, dividends and net

8    profits in constructive trust for the benefit of PLAINTIFFS.

9                                       **XI.**

10                          **NINETH CAUSE OF ACTION**

11      (Cause of Action as to all GRIFFITHE, RENEWABLE and GREEN ACRES and

12                               DOES 1 - 50)

13                            (Common Count)

14       86.      PLAINTIFFS hereby repeat, re-allege and incorporate each and every

15   allegation set forth in paragraphs 1 through 86 as though they were set forth in full and at

16   length herein.

17       87.      Within the last three and a half years GRIFFITHE, RENEWABLE, GREEN

18   ACRES, ROSSOUW, and DEFENDANTS, and each of them, has wrongfully and without

19   good cause or justification, diverted, taken, misappropriated and cheated valuable assets,

20   funds, and money belonging to PLAINTIFFS.

21       88.      GRIFFITHE and RENEWABLE received $150,000 for interest of SMRB

22   owned by RENEWWABLE.

23       89.      By virtue of their supposed ownership in GREEN ACRES, SMRB, and

24   RENEWABLE, PLAINTIFFS are entitled to an award of damages equal to the money

25   delivered to GRIFFITHE, RENEWABLE, and GREEN ACRES and to the net profits and

26   dividends which rightfully should have been paid to PLAINTIFFS.

27       90.      As a direct and proximate result of the wrongful conduct of GRIFFITHE,

28   RENEWABLE, GREEN ACRES, and ROSSOUW as alleged herein, PLAINTIFFS are

1   entitled to monetary judgment against each of them for not less than $150,000 plus

2   prejudgment interests, and cost, all subject to proof at trial.

3 **XII.**

4 **TENTH CAUSE OF ACTION**

5 (Cause of Action as to GREEN ACRES, SMRB, and RENEWABLE and DOES 1-50)

6 (Accounting)

7      91.     PLAINTIFFS hereby repeat, re-allege and incorporate each and every

8   allegation set forth in paragraphs 1 through 91 as though set forth in full and a length herein.

9      92.     By virtue of their ownership in GREEN ACRES, SMRB, and RENEWABLE,

10   PLAINTIFFS are entitled to accounting of all assets, liabilities, income and expenses

11   covering the period of May 2016 to the present.

12      93.     As well, PLAINTIFFS are entitled to an accounting of their respective share of

13   all profits, disbursements, and dividends.

14      94.     PLAINTIFFS pray for a judicial order demanding GREEN ACRES, SMRB,

15   and RENEWABLE are to provide PLAINTIFFS with a full and complete accounting as

16   allowed by law, at the sole expense of GREEN ACRES, SMRB, and RENEWABLE.

17 **XIII.**

18 **ELEVENTH CAUSE OF ACTION**

19 (Cause of Action as to all DEFENDANTS)

20 (Injunctive Relief)

21      95.     PLAINTIFFS hereby repeat, re-allege and incorporate each and every

22   allegation set forth in paragraphs 1 through 95 as though set forth in full and at length herein.

23      96.     There is a substantial risk DEFENDANTS, and each of them, will seek to

24   dilute PLAINTIFFS rights in GREEN ACRES, SMRB, and RENEWABLE by authorizing

25   and/or issuing additional shares or membership units or entering into new loans.

26      97.     There is also a substantial risk that DEFENDANTS, and each of them, will

27   strip GREEN ACRES, SMRB and RENEWABLE of value by distributing money or other

28   assets, leaving the company[ies] insolvent.

21

98.     PLAINTIFFS are therefore entitled to a preliminary injunction prohibiting DEFENDANTS, and each of them, from issuing any new securities in GREEN ACRES, SMRB, and RENEWABLE without prior court approval or from distributing any net profits of dividends from GREEN ACRES, SMRB, and RENEWABLE to any shareholder or members without prior court approval.

99.     Such an order would preserve the status quo and protect the rights and interests of PLAINTIFFS during the pendency of this litigation.

## PRAYER

**WHEREFORE,** PLAINTIFFS pray for relief against DEFENDANTS, and each of them, as follows:

### As to the First Cause of Action for Securities Fraud:

1.     For an order of restitution of all money received from PLAINTIFFS in a amount not less than $150,000;

2.     For prejudgment interest at the legal rate of 10% from May 2016 to the date of judgment according to proof; and

3.     For punitive damage in the amount sufficient to punish DEFENDANTS, and each of them, for their intentional wrong doing.

4.     For costs of suit according to proof.

### As to the Second Cause of Action for Unlicensed Broker-Dealer:

5.     For an order of restitution of all money received from PLAINTIFFS in an amount not less than $150,000;

6.     For prejudgment interest at the legal rate of 10% from May 2016 to the date of judgment according to proof;

7.     For punitive damage in the amount sufficient to punish DEFENDANTS, and each of them, for their intentional wrong doing.

8.     For costs of suit according to proof; and,

9.     For attorney's fees allowed by law.

///

COMPLAINT

1          **As to the Third Cause of Action for Fraud in the Inducement:**

2          10.    For an award of not less than $150,000 in economic damages according to

3     proof;

4          11.    For and award of not less than $150,000 for general damages according to

5     proof;

6          12.    For prejudgment interest at the legal rate of 10% from May 2016 to the date

7          13.    For punitive damages in the amount sufficient to punish DEFENDANTS, and

8     each of them, for their intentional wrong doing.

9          14.    For prejudgment interest at the legal rate of 10% from May 2016 to the date of

10    judgment according to proof; and

11         15.    For costs of suit according to proof.

12         **As to the Fourth Cause of Action for Negligent Misrepresentation:**

13         16.    For an award of not less than $150,000 in economic damages according to

14    proof;

15         17.    For an award of not less than $150,000 for general damages according to

16    proof;

17         18.    For prejudgment interest at the legal rate of 10%From May 2016 to the date

18    of judgment according to proof; and,

19         19.    For costs of suit according to proof.

20         **As to the Fifth Cause of Action for Breach of Fiduciary Duty:**

21         20.    For an award of not less than $150,000 in economic damages according to

22    proof;

23         21.    For prejudgment interest at the legal rate of 10% from May 2016 to the date

24    of judgment according to proof;

25         22.    For punitive damages in the amount sufficient to punish DEFENDANTS, and

26    each of them, for their intentional wrong doing.

27         23.    For costs of suit according to proof

28    ///

**As to the Sixth Cause of Action for Breach of Contract:**

24.    For an award of not less than $150,000 in economic damages according to proof;

25.    For prejudgment interest at the legal rate of 10% from May 2016 to the date of judgment according to proof; and ,

26.    For costs of suit according to proof.

**As to the Seventh Cause of Action for Negligence:**

27.    For an award of not less than $150,000 in economic damages according to proof;

28.    For  an award of general damages of not less than $150,000 according to proof;

29.    For prejudgment interest at the legal rate of 10% from May  2016 to the date of judgment according to proof; and,

30.    For costs of suit according to proof.

**As to the Eighth Cause of Action for Unjust Enrichment:**

31.    For an order of restitution of all money wrongfully received from PLAINTIFFS and all profits belonging to PLAINTIFFS in an amount not less than $150,000;

32.    For a judicial order mandating DEFENDANTS, and each of them, hold in constructive trust all money received from PLAINTIFFS, all profits and assets rightfully belonging to PLAINTIFFS and anything of value purchased or acquired by DEFENDANTS, and each of them, from said money, profits and assets;

33.    For prejudgment interest at the legal rate of 10% from May 2016 to the date of judgment according to proof; and ,

34.    For costs of suit, subject to proof.

**As to the Ninth Cause of Action for Common Count:**

35.    For a monetary award of all money wrongfully paid to DEFENDANTS, and each of them, or retained by DEFENDANTS, and each of them, in an amount not less than $150,000;

COMPLAINT

1    36.   For prejudgment interest at the legal rate of 10% from May 2016 to the date

2  of judgment according to proof; and,

3    37.   For costs of suit, subject to proof.

4              **As to the Tenth Cause of Action for Accounting:**

5    38.   For an order specifying PLAINTIFFS are entitled to a full accounting of all

6  assets, liabilities,  income and expenses of a GREEN ACRES, SMRB, and RENEWABLE

7  and for an accounting of all profits and income rightfully belonging to PLAINTIFFS; ·

8    39.   For costs of suit according to proof; and,

9    40.   For attorney's fees allowed by law.

10           **As to the Eleventh Cause of Action for Injunctive Relief:**

11    41.   For a preliminary injunction prohibiting DEFENDANTS, and each of them,

12  from issuing any new securities in GREEN ACRES, SMRB or RENEWABLE without prior

13  court approval or from distributing any net profits or dividends from GREEN ACRES,

14  SMRB or RENEWABLE to any shareholder or member without prior court approval; and ,

15    42.   For costs of suit according to proof.

16

17  Dated :    June 10, 2019                Respectfully submitted,

18

19

20

21  By:

22                                 Joseph Samec

23

24

25

26                                 Brenda Samec

27

28

# Exhibit

# A

# PURCHASE OF SHARES INTEREST AGREEMENT

**THIS PURCHASE OF BUSINESS AGREEMENT** (the "Agreement") made and entered into this 24th day of May, 2016 (the "Execution Date"),

**BETWEEN:**

Renewable Technologies Solution, Inc. of 3653 Via Zumaya St. Corona, CA 92881 (the "Seller")

OF THE FIRST PART

and

(Investor  Name)  Joseph and Brenda Samec 838 North Charter Dr. Covina, CA 92503 ,
California (the "Purchaser")

OF THE SECOND PART

**BACKGROUND**

A.   The Seller Robert Russell is the owner of 100% of the issued and outstanding interest (the "Interest") of SMRB, LLC a Washington Corporation (the "Corporation") which carries on the business of grow and oil manufacturing under the operating name Green Acres Pharms in State of Washington. The seller(s) Robert Russell and Guy Griffithe are 100% owners of Renewable Technologies Solution, Inc.

B.   The Seller of Renewable Technologies solution Inc. which will be identified as RTSI desires to sell the Interest to the Purchaser, and the Purchaser desires to buy the Interest of SMRB, LLC owed by RTSI.

**IN CONSIDERATION** of the provisions contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which consideration is acknowledged, the Parties agree as follows:

**<u>Definitions</u>**

1.   The following definitions apply in the Agreement:

a.   "Closing" means the completion of the purchase and sale of the Interest as described in this Agreement by the payment of agreed consideration, and the execution of this agreement.

b.   "Environmental Law" means any and all statutes, regulations, common laws or any other directives having force of law pertaining to protection of the environment including but not limited to all laws affecting the production, manufacture, storage, transport and disposal of Hazardous Materials.

c.   "Hazardous Material" means any material or substance of any description that could reasonably be expected to cause harm or damage to the health of man or any other living organism.

d.   "Parties" means both the Seller and the Purchaser and "Party" means any one of them.

**Sale**

2.   Subject to the terms and conditions of this Agreement, and in reliance on the representations, warranties, and conditions set out in this Agreement, the Seller agrees to sell 1% **One Percent Ownership Interest (PERCENT)** to the Purchaser and the Purchaser agrees to purchase the Interest from the Seller. (Purchaser is acquiring ownership interest in SMRB, LLC. owned by RTSI.)

**Purchase Price**

3.   The price to be paid by the Purchaser to the Seller for the Ownership Interest will be 100,000.00US Dollars (the "Total Purchase Price").

**Closing**

4.   The Closing of the purchase and sale of the Ownership Interest will take place on (the 05/24/2016_"Closing Date") at the offices of the Seller or at such other time and place as the Parties mutually agree.

5.   At Closing, and upon the Purchaser resolving the Total Purchase Price in full to the Seller, the Seller will: