a.    provide the Purchaser with this duly executed interest agreement; and

b.    Seller will take all steps necessary for the Corporation to enter the Purchaser, or its nominee, on the books of the Corporation, as the holder of the Interest.

**Payment**

8.    The Total Purchase Price for the Ownership Interest will be paid by the Purchaser in a lump sum payment of $ 100,000.00US Dollars in the form of a certified check, a wire transfer, or personal check.

**Seller's Representations and Warranties**

9.    The Seller represents and warrants to the Purchaser that:

a.    The Seller has full legal authority to enter into and exercise its obligations under this Agreement.

b.    All net proceeds of all products grown or manufactured sold will be disbursed on a quarterly basis. First distribution will be executed on the first Friday proceeding October 1st 2016. Second distribution will be executed on the Friday proceeding January 1st, 2017. All following distributions will follow on a normal calendar quarter. Profits are determined after all expenses are paid the remaining is deemed profits. Net profits from SMRB, LLC AKA Green Acres Pharms will be issued to Renewable Technologies Solutions, Inc. based on the total net profit for SMRB, LLC than allocated to its Ownership Interest holders based on percentage of ownership interest in perpetuity.

c.    The Corporation is a corporation duly incorporated or continued, validly existing, and in good standing and has all requisite authority to carry on business as currently conducted.

d.    The Seller is the absolute beneficial owner of the Interest, free and clear of any liens, charges, encumbrances or rights of others, and is exclusively entitled to dispose of the Ownership Interest.

e.    The Seller is a resident of the United States for the purposes of the *Internal Revenue Code*.

f.  The Corporation has withheld all amounts required to be withheld under income tax legislation and has paid all amounts owing to the proper authorities.

g.  There are no claims threatened or pending against the Corporation by any current or past employee relating to any matter arising from or relating to the employment of the employee.

G   The Corporation is operating in accordance with all applicable laws, rules, and regulations of the jurisdictions in which it is carried on. In compliance with such laws, the Seller has duly licensed, registered, or qualified the Corporation with the appropriate public authorities.

h.  The Corporation has not produced, manufactured, stored, transported or disposed of any Hazardous Materials of any kind and to the best knowledge of the Seller, no discharge, leakage or release of Hazardous Materials, whether accidental or otherwise, has occurred for which the Purchaser could ultimately become liable. There are no ongoing, pending, threatened or anticipated civil or criminal actions, enquiries or investigations with regard to the breach of any applicable Environmental Laws.

i.  The Corporation maintains insurance policies on its assets, of full force and effect, and of adequate value as would be reasonable in its industry. The Corporation has neither defaulted under these insurance policies, as a result of failure to pay premiums or due to any other cause, nor has the Corporation failed to give notice or make a claim under these insurance policies in a timely manner.

j.  The trademarks and trade names used in carrying on the Corporation are owned exclusively and validly by the Corporation. The trademarks and trade names are duly registered with the appropriate public authorities in order that the rights associated with the trademarks and trade names are protected. To the best knowledge of the Seller and the officers of the Corporation, there are no claims of

Infringement existing against the patents, trademarks, copyrights or any other trade names used by the Corporation.

k.  Any trademarks and trade names used in whole or in part in or required for the proper carrying on of the Corporation are validly and beneficially owned by and for the sole and exclusive use of the Corporation.

l.  The conduct of the Corporation does not infringe on the patents, trademarks, trade names or copyrights, domestic or foreign of any other person, firm or corporation to the best knowledge of the officers of the Corporation.

m.  This Agreement has been duly executed and delivered by the Seller and constitutes a legal and binding obligation of the Seller, enforceable in accordance with its terms, except as enforcement may be limited by bankruptcy and insolvency, by other laws affecting the rights of creditors generally, and by equitable remedies granted by a court of competent jurisdiction.

10. The representations and warranties given in this Agreement are the only representations and warranties. No other representation or warranty, either expressed or implied, has been given by the Seller to the Purchaser.

11. The Seller warrants to the Purchaser that each of the representations and warranties made by it is accurate and not misleading at the Closing Date. The Seller acknowledges that the Purchaser is entering into this Agreement in reliance on each warranty and representation.

12. The Seller's representations and warranties will survive the Closing Date of this Agreement for a period of five years, after which time, if no claim has been made by the Purchaser against the Seller regarding the breach or inaccuracy of a representation or warranty, the Seller will have no further liability with regard to any of the representations or warranties given in this Agreement.

13. Where the Purchaser has a claim against the Seller relating to one or more representations or warranties made by the Seller, the Seller will have no liability to the Purchaser unless the Purchaser provides notice in writing to the Seller containing full details of the claim on or before the third anniversary of the Closing Date.

14. Where the Purchaser has a claim against the Seller relating to one or more representations or warranties made by the Seller, and the Purchaser is entitled to recover damages from a third party then the amount of the claim against the Seller will be reduced by the recovered or recoverable amount less all reasonable costs incurred by the Purchaser in recovering the amount from the third party.

**Purchaser's Representations and Warranties**

15. The Purchaser represents and warrants to the Seller the following:

   a.  The Purchaser has full legal authority to enter into and exercise its obligations under this Agreement.

   b.  The Purchaser has funds available to pay the full Total Purchase Price and any expenses accumulated by the Purchaser in connection with this Agreement and the Purchaser has not incurred any obligation, commitment, restriction, or liability of any kind, absolute or contingent, present or future, which would adversely affect its ability to perform its obligations under this Agreement.

   c.  The Purchaser has not committed any act or omission that would give rise to any valid claim relating to a brokerage commission, finder's fee, or other similar payment.

   d.  The Purchaser is a resident of the United States for the purposes of the *Internal Revenue Code*.

   e.  This Agreement has been duly executed by the Purchaser and constitutes a legal and binding obligation of the Purchaser, enforceable in accordance with its terms, except as enforcement may be limited by bankruptcy and insolvency, by other laws affecting the rights of creditors generally, and by equitable remedies granted by a court of competent jurisdiction.

f.  The Purchaser has no knowledge that any representation or warranty given by the Seller in this Agreement is inaccurate or false.

g.  If the Interest Holder chooses to sell their interest the company reserves the rights to purchase all percentages of Owner Interest prior to all open market sells at current market value. If the company chooses to not acquire the ownership interest then the company must approve the new purchaser.

16. The representations and warranties given in this Agreement are the only representations and warranties. The Purchaser has given no other representation or warranty, either expressed or implied, to the Seller.

17. The Purchaser warrants to the Seller that each of the representations and warranties made by it is accurate and not misleading at the date of Closing. The Purchaser acknowledges that the Seller is entering into this Agreement in reliance on each warranty and representation.

18. Where the Seller has a claim against the Purchaser relating to one or more representations or warranties made by the Purchaser, and the Seller is entitled to recover damages from a third party then the amount of the claim against the Purchaser will be reduced by the recovered or recoverable amount less all reasonable costs incurred by the Seller in recovering the amount from the third party.

**Conditions Precedent to be Performed by the Purchaser**

19. The obligation of the Seller to complete the sale of the Interest under this Agreement is subject to the satisfaction of the following conditions precedent by the Purchaser, on or before the Closing Date, each of which is acknowledged to be for the exclusive benefit of the Seller and may be waived by the Seller entirely or in part:

    a.   All of the representations and warranties made by the Purchaser in this Agreement will be true and accurate in all material respects on the Closing Date.

**Conditions Precedent to be Performed by the Seller**

20. The obligation of the Purchaser to complete the purchase of the  Owner Interest under this Agreement is subject to the satisfaction of the following conditions precedent by the Seller, on or before the Closing Date, each of which is acknowledged to be for the exclusive benefit of the Purchaser and may be waived by the Purchaser entirely or in part:

    a.   All of the representations and warranties made by the Seller in this Agreement will be true and accurate in all material respects on the Closing Date.

    b.   The Seller will obtain and complete any and all forms, documents, consents, approvals, registrations, declarations, orders, and authorizations from any person or governmental or public body that are required of the Seller for the proper execution of this Agreement and transfer of the Owner Interest to the Purchaser.

    c.   The Seller will provide the Purchaser with complete information concerning the operation of the Corporation, in order to put the Purchaser in a position to carry on in the place of the Seller.

**Disclosure**

21. Upon the reasonable request of the Purchaser, the Seller will, from time to time, allow the Purchaser and its agents, counsel, accountant, or other representatives to have unrestricted access to the premises of SMRB, LLC and Renewable Technologies Solutions, Inc. limited to the scope of SMRB, LLC AKA Green Acres Pharms ownership, the Corporation and to all of the books, records, documents, and accounts of the Corporation, during normal business hours in order for the Purchaser to confirm the representations and warranties given by the Seller in this Agreement.

**Conditions Precedent Not Satisfied**

22. If either Party fails to satisfy any condition precedent as set out in this Agreement on or before the Closing Date and the opposite Party does not waive that condition precedent, then this Agreement will be null and void and there will be no further liability as between the Parties.

23. To the best knowledge of the Seller, no labor dispute is currently in progress, pending or threatened involving the Transferred Employees of the Corporation that would interfere with the normal productivity or production schedules of the Corporation.

**Non-Solicitation**

24. The Seller agrees that any attempt to encourage or induce employees, directors, agents or contractors to leave their jobs with the Corporation would be harmful and damaging to the Purchaser. The Seller further agrees that any attempt on the part of the Seller to interfere with the Purchaser's relationship with employees, directors, agents, contractors, vendors or service providers of the Corporation would be harmful and damaging to the Purchaser.

25. The Seller agrees that during the term of this Agreement and for a period of five years after the Closing Date of this Agreement, the Seller will not in any way directly or indirectly:

    a. Induce or attempt to induce any employee, director, agent, contractor or other service provider of the Purchaser to quit employment or retainer with the Purchaser;

    b. Otherwise interfere with or disrupt the Purchaser's relationship with its employees, directors, agents, contractors or other service providers;

    c. Discuss employment opportunities or provide information about competitive employment to any of the Purchaser's employees, directors, agents, contractors or other service providers; or

    d. Solicit, entice, or hire away any employee, director, agent, contractor or other service provider of the Purchaser.

**Non-Competition**

26. For a period of five years (the "Non-Competition Period") after the Closing Date, the Seller will not, either individually or in conjunction with any other person or business entity or in any other manner whatsoever, have interest in, enter employment with, lend money to, advise or permit its name to be associated with any business similar to or in competition with the Purchaser.

27. If the Non-Competition Period is determined to be void or unenforceable by a court of competent jurisdiction then it is the intent of the Parties that the Non-Competition Period be reduced in scope only to the extent deemed necessary to render the provision reasonable and enforceable. The Seller agrees that the Non-Competition Period is reasonable and all defenses to the enforcement of the Non-Competition Period are waived by the Seller.

**Non-Assumption of Liabilities**

28. It is understood and agreed between the Parties that the Purchaser is not assuming and will not be liable for any of the liabilities, debts or obligations of the Seller arising out of the ownership or operation of the Corporation prior to and including the Closing Date.

29. The Seller will indemnify and hold harmless the Purchaser, of its officers, directors, employees, agents and shareholders from and against all costs, expenses, losses, claims, and liabilities, including reasonable legal fees and disbursements, or demands for income, sales, excise or other taxes, suffered or incurred by the Purchaser or any of the above mentioned persons arising out of the ownership or operation of the Corporation prior to and including the Closing Date.

**Transfer of Third Party Contracts**

30. This Agreement should not be construed as an assignment of any third party contract from the Seller to the Purchaser if the assignment would be a breach of the third party contract.

31. The Purchaser will be solely responsible for acquiring new contracts with third parties where the existing contracts are not legally assignable from the Seller to the Purchaser.

32. Notwithstanding any other provision in this Agreement to the contrary, the Seller will not be liable for any losses, costs or damages of any kind including loss of revenue or decrease in value of the Corporation resulting from the failure of the Purchaser to acquire any third party contracts.

**Notices**

33. Any notices or deliveries required in the performance of this Agreement will be deemed completed when hand-delivered, delivered by agent, or seven (7) days after being placed in the post, postage prepaid, to the Parties at the addresses contained in this Agreement or as the Parties may later designate in writing.

**Expenses/Costs**

34. The Parties agree to pay all their own costs and expenses in connection with this Agreement.

**Confidentiality**

35. The Seller and the Purchaser will hold confidential all information (the "Confidential Information") pertaining to this Agreement including, but not limited to, the terms of this Agreement, the Total Purchase Price, the Parties to this Agreement, and the subject matter of this Agreement as well as any written or oral information obtained about the respective Parties that is not currently in the public domain. Confidential Information will not include the following:

    a.   Information generally known in the respective industries of the Purchaser and the Seller.

    b.   Information that enters the public domain through no fault of the Purchaser or the Seller.

    c.   Information that is independently created by the Purchaser or the Seller respectively without direct or indirect use of information obtained during the course of negotiations for this Agreement.

d.  Information that is rightfully obtained by the Purchaser or the Seller from a third party who has the right to transfer or disclose the information.

36. The Seller and the Purchaser may disclose any Confidential Information relating to this Agreement to any of its employees, agents and advisors where there is a need to know in relation to this Agreement and where the personnel agree to be legally bound by the same burdens of confidentiality.

37. The Seller agrees to indemnify the Purchaser against any and all harm suffered by the Purchaser for any breach of confidentiality by the personnel of the Seller.

38. The Purchaser agrees to indemnify the Seller against any and all harm suffered by the Seller for any breach of confidentiality by the personnel of the Purchaser.

39. The confidentiality restrictions in this Agreement will continue to apply after the Closing Date of this Agreement without any limit in time.

**Mediation and Arbitration**

40. In the event a dispute arises out of or in connection with this Agreement, the Parties will attempt to resolve the dispute through friendly consultation.

41. If the dispute is not resolved within a reasonable period then any or all outstanding issues may be submitted to mediation in accordance with any statutory rules of mediation. If mediation is not successful in resolving the entire dispute or is unavailable, any outstanding issues will be submitted to final and binding arbitration in accordance with the laws of the State of Nevada. The arbitrator's award will be final, and judgment may be entered upon it by any court having jurisdiction within the State of California.

**Severability**

42. The Parties acknowledge that this Agreement is reasonable, valid, and enforceable; however, if any part of this Agreement is held by a court of competent jurisdiction to be invalid, it is the intent of the Parties that such provision be reduced in scope only to the extent deemed necessary to render the provision reasonable and enforceable and the

remainder of the provisions of this Agreement will in no way be affected or invalidated as a result.

43. Where any provision in this Agreement is found to be unenforceable, the Purchaser and the Seller will then make reasonable efforts to replace the invalid or unenforceable provision with a valid and enforceable substitute provision, the effect of which is as close as possible to the intended effect of the original invalid or unenforceable provision.

### Governing Law

44. This Agreement will be governed by and construed in accordance with the laws of the State of California.

### Jurisdiction

45. The courts of the State of California are to have jurisdiction to settle any dispute arising out of or in connection with this Agreement.

### General Provisions

46. This Agreement contains all terms and conditions agreed to by the Parties. Statements or representations which may have been made by any Party to this Agreement in the negotiation stages of this Agreement may in some way be inconsistent with this final written Agreement. All such statements are declared to be of no value to either Party. Only the written terms of this Agreement will bind the Parties.

47. This Agreement may only be amended or modified by a written instrument executed by all of the Parties.

48. A waiver by one Party of any right or benefit provided in this Agreement does not infer or permit a further waiver of that right or benefit, nor does it infer or permit a waiver of any other right or benefit provided in this Agreement.

49. This Agreement will not be assigned either in whole or in part by any Party without the written consent of the other Party.

50. This Agreement will pass to the benefit of and be binding upon the Parties' respective heirs, executors, administrators, successors, and permitted assigns.

51. The clauses, paragraphs, and subparagraphs contained in this Agreement are intended to be read and construed independently of each other. If any part of this Agreement is held to be invalid, this invalidity will not affect the operation of any other part of this Agreement.

52. All of the rights, remedies and benefits provided in this Agreement will be cumulative and will not be exclusive of any other such rights, remedies and benefits allowed by law or equity.

53. This Agreement may be executed in counterparts.

54. Headings are inserted for the convenience of the Parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine gender include the feminine gender and vice versa. Words in the neuter gender include the masculine gender and the feminine gender and vice versa.

**IN WITNESS WHEREOF** the Parties have duly affixed their signatures under hand and seal on this 24th day of May, 2016.

Renewable Technologies Solution, Inc.
(Seller)
Per:_____
Guy Griffithe – Secretary

Per:_____
Robert Russell - President

_____
Joseph Samec

_____
Brneda Samec

# Exhibit

# B

## <u>Personal Guarantee Agreement</u>
## <u>Addendum 2</u>

As of June 21, 2016 the purchaser has provided an additional payment in the amount of $50,000.00. This will provide the purchaser an additional half of one percent providing total interest ownership of 1.5%. This is effective and reflect for the 3rd quarter distribution. Total capital to date is set at $150,000.00

X _____

Guy Griffithe

# Exhibit

# C

**JOSEPH A. SAMEC**
**BRENDA J. SAMEC**
838 N CHARTER DR.
COVINA, CA 91724-2620

CHASE
PRIVATE
CLIENT

1894

DATE 5-26-16

PAY TO THE
ORDER OF _Renewable Technologies Solution_ $ 100,000.—

_One hundred Thousand Dollars_ oo/100 DOLLARS

J.P.Morgan Chase Bank, N.A.

MEMO _Share Purchase_                    _Joseph A Samec_

⑆322271627⑆   ⑈110653660⑈ 1894

---

Seq: 146
Batch: 023231
Date: 05/26/16

Seq:00146 05/26/16
BAT:023231 CC:3180002363
WT:01 LTPS:Jacksonville PT
BC:Corona Plaza BC CA6-224

Credited To The Account Of
The Within Named Payee
Endorsement Guaranteed
Bank of America, N.A.

For Deposit Only
Renewable Technologies Solution Inc

---

#1

Posting Date: 20160526

Sequence Number: 5590735904

Amount: $100,000.00

Account: 110653660

Routing Transit Number: 32227162

Check/Serial
Number: 000000001894

Bank Number: 703

IRD Indicator: 0

BOFD: 000000000

Capture Source: PV

Entry Number: 0000004520

UDK: 70316052600559073590 4

Cost Center:

Teller Number:

Teller Sequence Number:

Missing Image: 5

PE Indicator: N

Application Code: 1

Trancode: 001894

DB/CR: DB

Item Type: P

Processing Date:

Copyright © 2010 J.P. Morgan Chase & Co. All Rights Reserved



#1

Posting Date: 20160621

Sequence Number: 9780290242

Amount: $50,000.00

Account: 110653660

Routing Transit Number: 32227162

Check/Serial
Number: 000000001912

Bank Number: 703

IRD Indicator: 0

BOFD: 000000000

Capture Source: PV

Entry Number: 0000006681

UDK: 70316062100978029042

Cost Center:

Teller Number:

Teller Sequence Number:

Missing Image: 5

PE Indicator: N

Application Code: 1

Trancode: 001912

DB/CR: DB

Item Type: P

Processing Date:

Seq: 195
Batch: 908395
Date: 06/21/16

Copyright © 2010 J.P. Morgan Chase & Co. All Rights Reserved

# Exhibit

# D

**BRIDGEGATE MANAGEMENT**
200 S MAIN ST # 305
CORONA, CA 92882-2211

1027

16-24/1220 4209
1542382641

Date _____

Pay To The
Order of _____   $ _____

Wells Fargo Bank, N.A.
California
wellsfargo.com                                          _____ Dollars

For _____

⑆"000000 1027"⑆ ⑆122000247⑆ 154 238 264 1⑆

**BRIDGEGATE MANAGEMENT**
200 S MAIN ST # 305
CORONA, CA 92882-2211

1032

16-24/1220 4209
1542382641

Date _____

Pay To The
Order of _____   $ _____

Wells Fargo Bank, N.A.
California
wellsfargo.com                                          _____ Dollars

For _____

⑆"000000 1032"⑆ ⑆122000247⑆ 154 238 264 1⑆



RENEWABLE TECHNOLOGIES SOLUTION INC
CORONA, CA

Bank Of America
11-35/1210

005024

EZShield™ Check Fraud
Protection for Business

1/25/2017

TO THE
ORDER OF    Joseph & Brenda Samec

$ **8,752.99

Eight Thousand Seven Hundred Fifty-Two and 99/100****************************************************    DOLLARS

Joseph A Samec
838 N Charter Dr.
Covina, CA 91724-2620

MEMO

AUTHORIZED SIGNATURE

4th Quarter Distribution                                                      MP

⑈005024⑈ ⑆121000358⑆325053468170⑈

RENEWABLE TECHNOLOGIES SOLUTION INC                                      005024

    Joseph & Brenda Samec
Date        Type    Reference        Original Amt.    Balance Due    1/25/2017  Discount    Payment
1/25/2017   Bill                     8,752.99         8,752.99                              8,752.99
                                                                     Check Amount          8,752.99

Business Misc        4th Quarter Distribution                                               8,752.99

**RENEWABLE TECHNOLOGIES SOLUTION INC**
200 S. MAIN STREET STE 305
CORONA, CA 92882

**1004**

16-24/1220 5651
1031398900

3

Date 4/29/17

Pay to the
order of Joseph & Brenda Samec    $ 7610.⁰⁰

Seven thousand Sixhded ten and ⁰⁰/₁₀₀ Dollars

WELLS FARGO    Wells Fargo Bank, N.A.
California
wellsfargo.com

For 1st Qtr but 2017 GAP

⑈122000247⑈ 1031398900⑈ 01004

**GREEN ACRES PHARMS LLC**
200 S. MAIN STREET STE 305
CORONA, CA 92882

1013

16-24/1220 5651
5881331119

Date 7/31/17

Pay to the
order of  Joseph Samec                                    $ 5299.64

fifty two hundred ninty nine and 64/100                    Dollars

WELLS FARGO  · Wells Fargo Bank, N.A.
California
wellsfargo.com

For 2nd Qtr Dist 2017

⑈122000247⑈ 5881331119⑈ 01013

i-ARC!

JPMorgan Chase & Co.    i-ARC!

Close

⊞ Item Deposit Screen

⊞ View Image Screen



Add to Fax-Mail-Print List    Return to Item Deposit Screen

Copyright © 2010 J.P. Morgan Chase & Co. All Rights Reserved

# Exhibit

# E

*6/18/18*
*3:47 Pm*

## SUBSCRIPTION AGREEMENT

Manager, Guy Griffithe
Green Acre Pharms, LLC
30251 Golden Lantern, Suite # E405
Laguna Niguel, CA 92677

> Re: *Subscription for Membership Interest*

Manager:

Based on Company's representation that Green Acres Pharm, LLC has purchased 49% of SMRB, LLC in Washington State, and that Green Acres Pharms, LLC receives pro-rata income from SMRB, LLC based on SMRB, LLC's net revenues, I hereby subscribe to purchase One and One half percent 1.5%) Class B Membership Interest, for a total membership interest of Three (3.0%) (the "Interest") in Green Acre Pharms, LLC, a Nevada limited liability company (the "Company"), for securing the purchase price of Four Hundred Thousand Dollars ($150,000) from Joseph Samec. Enclosed is a certified check or a bank cashier's check in the amount of the purchase price payable to the order of the Company. I understand that this subscription may be rejected in whole or in part, in the sole discretion of the Company.

This subscription is made on the following terms:

1.    *Representations and Warranties.* I hereby represent and warrant to the Company, its Manager, and Members, that:

1.1.    I am a citizen of the United States and am at least twenty-one (21) years of age.

1.2.    The Interest is being acquired by me for investment, for my own account, and not with a view to or in connection with the resale or distribution thereof. I have no contract, undertaking, agreement, arrangement, or plans with any Person to sell, hypothecate, pledge, donate, or otherwise transfer to any such Person all or any part of the Interest.

1.3.    My present financial condition is such that I am under no present or contemplated future need to dispose of any portion of the Interest to satisfy any existing or contemplated undertaking, need, or indebtedness.

1.4.    I am an "Accredited Investor" as defined by Rule 501 of Regulation D of the Federal Securities Act of 1933 (the "Securities Act") pursuant to section 2.7 of this agreement.

2.    *Acknowledgment of Certain Facts.* I acknowledge my awareness and understanding of the following:

2.1.    The purchase of the Interest is a speculative investment which involves a high degree of risk of loss by me of my entire investment.

2.2.    I have both the knowledge and experience in financial matters sufficient to evaluate the purchase of the Interest and am able to bear the economic risk of the purchase.

2.3.    No federal or state agency has made any finding or determination as to the fairness for public investment, nor any recommendation or endorsement of, the Interest.

2.4.    There are restrictions on the transferability of the Interest; there will be no market for the Interest; accordingly, it may not be possible for me to liquidate readily, or at all, my investment in the Company in case of an emergency.

2.5.    The Interest has not been registered under the Securities Act or any state securities law.

2.6.    The Interest has been acquired pursuant to an investment representation on my part and may not be sold, pledged, hypothecated, donated, or otherwise transferred, whether or not for consideration, by me, except in compliance with the terms of the Company Operating Agreement.

2.7    I have a preexisting business or personal relationship with the Company or its Manager.

3.    *Acceptance*. This Subscription Agreement shall become a binding agreement between the Company and me when the Company executes a counterpart hereof.

4.    *Successors and Assigns*. When fully executed, this Subscription Agreement shall be binding upon me and shall inure to the benefit of the Company, its Manager and Members, and their respective heirs, personal representatives, successors, and assigns. This Subscription Agreement is not assignable by me.

5.    *California Law*. The terms and provisions of this Subscription Agreement and any dispute arising hereunder shall be governed by the internal law, not the law of conflicts, of the State of California.

IN WITNESS WHEREOF, I have executed this Subscription Agreement the day and year first above written.

Very truly yours,

_____

Subscriber Printed Name: Joseph Samec &
Brenda Samec

Address:

The foregoing subscription is hereby accepted this 15th day of June, 2018

GREEN ACRES PHARMS, LLC

By: _____
Name: Guy Griffithe
Title:  Manager

## MUTUAL RESCISSION OF SHARES INTEREST AGREEMENT

This is an agreement of mutual rescission of a shares interest agreement.  Effective as of June 15, 2018 ("Rescission Date") by and between RENEWABLE TECHNOLOGIES SOLUTION, INC., a Nevada corporation, with an address at 30251 Golden Lantern #E405 Laguna Niguel CA 92677, hereinafter "Company," and Brenda & Joseph Samec with an address at 838 N. Charter Drive, Covian, Ca 91724, hereafter referred to as "Investor," and, together with Company, "parties."

### RECITALS

Whereas, EFFECTIVE AS OF _____, THE PARTIES ENTERED INTO A Shares Interest Agreement; and

WHEREAS, the parties now realize that the Shares Interest Agreement was the result of mutual mistakes of fact and/or law, and therefore the parties have determined that it is in their best interests to formalize the voiding of the Shares Interest Agreement by mutually rescinding the Shares Interest Agreement as of Rescission Date; and

WHEREAS, in consideration for rescission of the Shares Interest Agreement by mutually rescinding the Shares Interest Agreement as on the Rescission Date; and

WHEREAS, in consideration for rescission of the Shares Interest Agreement and other valuable consideration, receipt of which is hereby acknowledged, the parties intend to rescind the shares Interest Agreement as of the Rescission Date.

NOW THEREFORE, in consideration of the above recitals and the mutual benefits contained herein, the parties hereby agree as follows.

1. **Rescission of the Shares Interest Agreement.**  In consideration of the mutual covenants of the parties hereto, the parties hereby rescind the aforementioned Shares Interest Agreement, attached and marked as *Exhibit A,* effective as of Rescission Date, and the Shares Interest Agreement shall cease to be of any further force and effect.  The investor hereby returns, transfers and conveys its interest in the Company to the Company and the issuance of the interest in the Company is hereby null and void.

2. **Entire Agreement.**  This Agreement and the attached exhibits constitute the entire agreement between the parties.  Any prior agreement are of no force and effect.

3. **Binding effect.**  This Agreement shall be binding on and inure to the benefit of the parties to this Agreement and their heirs, personal representatives, successors, and assigns, except as otherwise provided in this Agreement.

4. **Governing Law.**  This Agreement and the legal relations between the parties shall be governed by and constructed in accordance with the laws of the State of California.

5. <u>Headings.</u> The headings in this Agreement are inserted for convenience only.  They do not constitute          part of this Agreement and shall not be used in its construction.

6. <u>Waiver.</u> The waiver by any party to this Agreement are inserted for convenience only. They do not constitute part of this agreement and shall not be used in its construction.

7. <u>Severability.</u> If any term of this Agreement is to any extent invalid, illegal, or incapable of being enforced, such term shall be excluded to the extent of such invalidity, illegality, or unenforceability; all other terms hereof shall remain in full force and effect.

8. <u>Counterparts.</u> This Agreement may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument.  In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original thereof.


**RENEWABLE TECHNOLOGIES SOLUTION, INC.**


Dated: _____,2018          _____

                                      Guy Griffithe, President

                                      Address: 30251 Golden Lantern Suite E 405

                                      Laguna Niguel, CA 92677



                                      INVESTOR


Dated:_ _____,2018          _____

                                      Joseph Samec

                                      Brenda Samec

                                      838 N. Charter Drive

                                      Covina, CA 91724

# Exhibit

# F

Green Acres Pharms, LLC & Renewable Technologies Solution, Inc.

October 5, 2018

Attn: Joseph Samec

SENT VIA EMAIL

Re:    Rescission and Repurchase Offer pursuant to NV Rev Stat §90.680 (2013);
Limited Liability Company Interests in Green Acres Pharms, LLC and/or shares of
Renewable Technologies Solution, Inc. (the "Interests")

Dear Joseph Samec:

This notice is being sent to you because you have previously purchased an ownership interest in Renewable Technologies Solution, Inc., a Nevada corporation, some of which have been subsequently converted to an interest in Green Acres Pharms, LLC, a Nevada limited liability company (collectively, the "Company"). Due to several factors, including (i) the delay in achieving some of the Company's goals as anticipated when you purchased your Interests, (ii) the delay in the Company's ability to make distributions as initially planned, (iii) the fact that the Company is aware that several investors are dissatisfied with their investment, and (iv) investors may possibility have the right to rescind in accordance with NRS §90.660, thereby potentially giving investors the right to a rescission, the Company hereby offers to:

- rescind the offer and sale of the Interests sold to you and repurchase your Interests;
- to release you from all contractual obligations that the Company may have required you to undertake to effectuate the sale; and
- to refund to you the full amount paid for your Interests, **plus** interest equivalent to an additional 10% of your purchase price, and **without deduction** for any amounts previously distributed to you with respect to the Interests.

We believe this offer provides all investors who wish to do so the opportunity to withdraw their investment in and involvement with the Company, not only without incurring any loss, but with a positive return over the relatively short term the investment was held.

This rescission offer will remain open for a period of 30 days from the date you receive this letter (the "Rescission Period").

Should you decide to accept this offer of rescission, kindly sign and return this letter indicating your acceptance. Upon receipt of your acceptance, and upon the closing of the Rescission Period, the Issuer will refund your initial purchase price, pay an additional 10% above your initial purchase price to you, and you will be released from any and all contractual obligations as described above, in exchange for your execution of a Repurchase Agreement and an Assignment Separate From Certificate, transferring your interests back to the Company. Payment for the repurchase is expected to be completed with 60 days from the end of the Rescission Period.

If you decide to decline this offer of rescission, please so indicate below, sign and return this letter. Declining this offer, or failure to respond to this offer within the Rescission Period, means that you will retain your Interests in the Company and release the Company from any liability for any claims you may have against the Company arising out of your purchase of the Interests and will lose any right you may have to sue the Company for potential violations of Nevada law arising out of the offer and sale of the Interests.

Initial amount invested: 150,000.00

Interest to be paid: 15,000.00

Total rescission payment amount: 165,000.00

☐    I accept this rescission offer. Please refund the purchase price of the securities to me plus the 10% premium, and without deduction for prior distributions.

☐    I decline this offer and will continue my investment.

If your Interests are held jointly, all owners must execute this form.  Return the executed form to the Company prior to the expiration of the Rescission Period, either by email to rdevlin@forefrontlegalgroup.com or in hard copy to 30251 Golden Lantern STE E 405, Laguna Niguel, CA 92677.

INVESTOR                                    INVESTOR

_Joseph _____                            _Brenda Seemee_
Name:                                       Name:

Date: _0 3  8_                              Date: _10 31 18_

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (ACTION IN NONBANKRUPTCY FORUM)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 8/22/19, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Debtor: Guy S. Griffithe, 30251 Golden Lantern, #E405, Laguna Niguel, CA 92677

Debtor's Counsel: Bert Briones, Red Hill Law Group, 15615 Alton Parkway, Ste. 210, Irvine CA 92618

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 8/22/19, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Judge Theodor C. Albert, US Bankruptcy Court, Santa Ana Division, Ronald Reagan Federal Building, 411 W. Fourth St. Suite 5085, Santa Ana CA 92701-4593
Trustee: Thomas H. Casey, 22342 Avenida Empresa, Ste. 245 Rancho Santa Margarita CA 92688
Us Trustee: United States Trustee, 411 W. Fourth St. Ste. 7160, Santa Ana Ca 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/22/19 | Joseph Samec | | |
|---------|--------------|--|--|
| Date | Printed Name | Signature | |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.